ROBERT HIGGINS, SR., Respondent, v. STATE OF NEW YORK, Appellant. (Claim No. 41133.)

ROBERT HIGGINS, JR., an Infant by His Guardian ad Litem, ROBERT HIGGINS, SR., Respondent, v. STATE OF NEW YORK, Appellant. (Claim No. 41134.)

Fourth Department, December 9, 1965.

*Louis J. Lefkowitz, Attorney-General (Jeremiah Jochnowitz* of counsel), for appellant.

*John J. Gruber* for respondents.

*Per Curiam.* The State has appealed from judgments in favor of the claimants because of an assault upon the infant plaintiff on July 15, 1962. The assault occurred in a public park in the City of Buffalo by a patient of the Buffalo State Hospital, a

State institution for the care and treatment of the mentally ill. The patient had been in that institution for a period of approximately 12 years. During that time his conduct and history were not such that he could properly have been classified as a dangerous person. In fact his condition had improved to the extent that the hospital authorities had determined that he was mentally eligible for convalescent care in July of 1962. That status would have permitted him to be released from the hospital and be free to go about alone. The only reason he had not been released on convalescent care status prior to the assault was that he had no home to go to. Because convalescent care was not practical, he was placed on " open ward " status, which permitted him to go about the hospital grounds and outside of the grounds into the neighborhood and the area generally. He was not restricted from going to the park which was nearby. This lack of restriction is one of the bases of the claim of negligence against the State.

During the time he was in the hospital there was only one occasion when he caused trouble. That was in June of 1958 when he struck another patient on the way to the dining room. This was one of the many matters considered by the hospital authorities to determine his eligibility for convalescent care and " open ward " status.

Another claim of negligence is that he was not examined psychiatrically often enough. The answer to this is that he could not have been a very obstreperous patient or the records of the hospital would have had many, rather than few, entries relating to him. This argument also overlooks the fact that patients in a mental hospital are under constant observation, not only by psychiatrists, but by members of the staff and the attendants.

There is nothing in the record to indicate that treatment, lack of confinement, or the conclusions of the director and the staff were medically unsound or inaccurate, but if they were, that inaccuracy would be a professional or diagnostic error for which the State would not be liable. " The prediction of the future course of a mental illness is a professional judgment of high responsibility and in some instances it involves a measure of calculated risk. If a liability were imposed on the physician or the State each time the prediction of future course of mental disease was wrong, few releases would ever be made and the hope of recovery and rehabilitation of a vast number of patients would be impeded and frustrated. This is one of the medical and public risks which must be taken on balance, even though it may sometimes result in injury to the patient or others." (*Taig* v. *State of New York,* 19 A D 2d **182, 183.**)

The doctrine of freedom from liability is particularly present where the risk was not reasonably foreseeable. (*Flaherty* v. *State of New York*, 296 N. Y. 342; *Williams* v. *State of New York*, 308 N. Y. 548.)

Furthermore, nothing should unreasonably interfere with the rehabilitative processes and the obligation of the State to apply modern and generally accepted methods and controls in an effort to improve the mental condition of patients in State institutions. '' A balance must be struck between contending interests — (1) the State's duty to treat and care for its mental defective wards, with an eye toward returning them to society more useful citizens, and (2) the State's concern that the inmates of its institutions cause no injury or damage to the property of those in the vicinity. That balance may be hard to achieve. We keep within settled legal principles, however, if the State is held only to a duty of taking precautions against those risks ' reasonably to be perceived ' (*Palsgraf* v. *Long Island R. R. Co.* [248 N. Y. 339,] 344, *supra*), and if the community assumes the risk of accidental loss or damage to property by an inmate of an open institution ''. (*Excelsior Ins. Co. of N. Y.* v. *State of New York*, 296 N. Y. 40, 46.)

The judgments appealed from should be reversed and the claims dismissed.

WILLIAMS, P. J., BASTOW, GOLDMAN, HENRY and DEL VECCHIO, JJ., concur.

Judgments unanimously reversed on the law and facts, without costs of this appeal to either party and claims dismissed, without costs. Certain findings of facts disapproved and reversed and new findings made.