PETER E. CALAMARI et al., Plaintiffs, v J. PETER GRACE III, et al., Defendants and Third-Party Plaintiffs-Appellants. FIRST AMERICAN TITLE INSURANCE COMPANY OF NEW YORK, Third-Party Defendant-Respondent.

Second Department, December 5, 1983

**APPEARANCES OF COUNSEL**

*Sprague, Dwyer, Aspland & Tobin (John J. Milligan* and *John E. Regan* of counsel), for appellants.

*Dollinger, Gonski & Grossman, (Leslie A. Foodim* of counsel), for respondent.

**OPINION OF THE COURT**

WEINSTEIN, J.

This appeal brings up for review the issue of the privity requirement as a potential bar to recovery by third parties in professional malpractice cases. More specifically, it focuses upon the liability of a title insurer for errors in or omissions from an abstract of title which had been prepared at the request of one other than the party currently seeking damages from the insurer. It arises in the context of an action on behalf of the grantees of a particular parcel of real estate in the Village of Quogue to recover damages for breach of a covenant against grantors' acts contained in

the deed of conveyance. The title insurer as subrogee commenced that action for breach of covenant in the name of the grantees. The Graces, who were the grantors of the subject parcel, thereupon commenced a third-party action by impleading the title insurer. The instant appeal is concerned with the dismissal of this third-party action.

*The Facts:*

In 1973, the Graces acquired, from two different owners, two contiguous parcels of land in the Village of Quogue. They thereafter conveyed the easterly parcel (parcel 2) to one Paul J. Mejean and his wife, Inger. In order to provide the Mejeans with a parcel of sufficient area to constitute a buildable plot under the local zoning ordinance, the Graces agreed to also convey a narrow strip from the abutting edge of their westerly parcel (a portion of parcel 1). The aforesaid property was surveyed and plotted by a local surveyor, its description certified by the Mejeans' title company and a deed duly recorded. It was subsequently discovered, upon the Mejeans' application for a building loan, that the survey and description upon which said deed was based were erroneous. A corrected deed was accordingly executed and recorded on September 8, 1977.

On or about October 24, 1980, the Graces entered into a written contract with the Calamaris for the sale of the balance of parcel 1. The contract specifically provided that the premises were to be "transferred subject to any state of facts which an accurate survey may show provided they do not render title unmarketable". By a scrivener's error, the description attached to the contract was a description of the parcel as originally acquired by defendants. This fact was specifically pointed out to plaintiff Peter A. Calamari, who is an attorney.

The Calamaris employed the First American Title Insurance Company of New York, the third-party defendant, to examine the title, certify the metes and bounds description of the property and insure the title of the property conveyed. The title company, however, negligently failed to discover and examine the deeds to the Mejeans which changed the easterly boundary of parcel 1.

In reliance upon the title insurer's certified description and the resulting error of the scrivener who prepared the

deed, the property was erroneously described in the deed from the Graces to the Calamaris, title was closed, the purchase price paid and the deed delivered to the Calamaris on January 5, 1981. The sale price was $295,000 and the deed contained a covenant against grantors' acts.

In June, 1981, the Calamaris commenced an action against the title company due to the incurable defect in title which was of record when the policy was issued. The action was ultimately settled for the sum of $5,000, and the policy of title insurance was amended to reflect the correct boundaries of the parcel conveyed. By the terms of the settlement, the title insurer retained the right to pursue an action against the grantors, with any amount recovered in excess of the $5,000 settlement to be the property of the Calamaris.

The instant action seeking damages for breach of the covenant against grantors' acts was thereafter commenced in the name of the Calamaris by the insurer as subrogee. The Graces' answer alleges mutual mistake, a scrivener's error and negligence by the title insurer, in addition to stating a counterclaim for reformation of the deed. As appears from the answer, the description used in the deed to the Calamaris was not the contract description, but rather, it was a description prepared and certified by First American Title Insurance Company and utilized by the scrivener in reliance thereon.

The Graces then impleaded the title insurer. The third-party complaint contained two causes of action, one sounding in indemnity and the other in negligence. The Graces moved to serve amended pleadings based on the assertion that the stipulation of settlement was champertous. Special Term granted the title insurer's cross motion to dismiss the third-party complaint on the grounds that there was no privity of contract between the defendants and First American.

The Graces thereupon sought and were granted leave to reargue the granting of the title insurer's cross motion for dismissal of the third-party complaint. Upon reargument, the court adhered to its determination to dismiss the third-party complaint. This appeal is limited to so much of the order as adhered to the court's prior determination.

We are now faced with the issue of whether to permit recovery by a third person for pecuniary loss arising from the negligent representations of a professional with whom said person has had no contractual relationship.

*The Privity Requirement:*

Although the requirement of privity of contract has met with criticism to the effect that it is an anachronistic concept to insulate incompetent professionals (see Note, Attorney Negligence in Real Estate Title Examination And Will Drafting: Elimination of the Privity Requirement as a Bar to Recovery by Foreseeable Third Parties, 17 New Eng L Rev 955, 958-959), it is far from extinct. Among the leading American precedents for not imposing liability upon professionals for negligence which affects individuals with whom the party liable has no direct contractual relationships are *Savings Bank v Ward* (100 US 195) and *Ultramares Corp. v Touche* (255 NY 170). In *Savings Bank* (*supra*), the defendant, who was an attorney employed by the purported owner of a certain parcel of real estate to examine title and report on the condition of same, negligently certified that his client had good record title. In point of fact, the client had already transferred the lot in fee by a duly recorded conveyance which the attorney could have ascertained with the exercise of a reasonable degree of care. The plaintiff bank had relied upon the attorney's certification of title in making a loan secured by real estate allegedly owned by the borrower. The court's paramount concern was its fear of extending liability beyond the parameters of the attorney-client relationship as evinced by its emphasis of the fact that the service was performed by the defendant for a third person without any knowledge that the certificate of good title was to be used by that person for the purpose of procuring a loan from the injured party (*Savings Bank v Ward, supra,* p 199). Accordingly, the court refused to find the attorney liable to the bank for any loss sustained by reason of the certificate, there being no evidence of fraud, collusion, falsehood or privity of contract between the parties, and since the service performed negligently was neither imminently dangerous to the lives of others nor an act performed in pursuance of some legal duty. Inasmuch as there was no attendant

ambiguity in the contract, the court held that proof of a local custom or usage could not be invoked to construct a contract where none in fact existed (*Savings Bank v Ward, supra,* pp 205-206).

In *Ultramares Corp. v Touche (supra),* the Court of Appeals reversed a verdict awarding damages to the plaintiff, notwithstanding a finding that defendant public accountants had been negligent, on the ground that no duty was owed to that particular plaintiff due to a lack of privity. Plaintiff had made several loans on the faith of the defendants' certification. While noting that "[t]he assault upon the citadel of privity is proceeding in these days apace", Chief Judge CARDOZO expressed the following fear: "If liability for negligence exists, a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class" (*Ultramares Corp. v Touche, supra,* pp 180, 179). The situation therein was carefully distinguished from instances in which the service rendered by the professional was intended primarily for the information of a third person, who was effectively, if not formally, a party to the contract (see *Glanzer v Shepard,* 233 NY 236). Moreover, the scope of the holding was clearly delineated so as not to be construed as an emancipation of professionals from the consequences of fraud. "It does no more than say that if less than this is proved, if there has been neither reckless misstatement nor insincere profession of an opinion, but only honest blunder, the ensuing liability for negligence is one that is bounded by the contract, and is to be enforced between the parties by whom the contract has been made" (*Ultramares Corp. v Touche, supra,* p 189).

It is a generally accepted tenet of New York law that a duty directly assumed for the benefit of a particular person or entity does not extend to third parties who were not intended beneficiaries of the subject undertaking. There is no liability for injuries sustained by members of the general public who might potentially be affected by negligence in the promised performance (*Moch Co. v Rensselaer Water Co.,* 247 NY 160, 168; *Oathout v Johnson,* 88 AD2d 1010; 2

Harper and James, Torts, § 18.6, pp 1049-1051). The underlying principle is that the imposition of a duty upon one unable to control the tort-feasor would be unduly onerous (*Pulka v Edelman,* 40 NY2d 781, 784, mot for rearg den 41 NY2d 901).

In the area of attorneys' negligence, New York authorities do not extend liability in situations where the act of misfeasance or nonfeasance may cause injury to a third party with whom there is no privity, provided that the attorney is charged merely with simple negligence (*Vernes v Phillips,* 266 NY 298, 301; *Kahn v Crames,* 92 AD2d 634, 635; *Harder v Arthur F. McGinn, Jr., P. C.,* 89 AD2d 732, 733, affd 58 NY2d 663; *Gifford v Harley,* 62 AD2d 5, 7; *Victor v Goldman,* 74 Misc 2d 685, affd 43 AD2d 1021; *Maneri v Amodeo,* 38 Misc 2d 190, 192; *Dallas v Fassnacht,* 42 NYS2d 415, 417). This court has recently affirmed the dismissal of a complaint in a legal malpractice action commenced by a nonclient third party against the defendant law firm on the grounds that there was neither privity of contract nor an assignment of a cause of action for malpractice (*Pomona Enterprises v Bleakley, Platt, Schmidt & Fritz,* 95 AD2d 988). It is thus evident that New York has not retreated from the requirement of privity in legal malpractice cases. Nor should the language employed by Special Term in *Baer v Broder* (106 Misc 2d 929, 935, affd on other grounds 86 AD2d 881), to the effect that "the citadel of privity is not invulnerable to the assault made upon it in this case", be construed as an indication to the contrary. That case involved an action to recover damages for legal malpractice commenced by the widow of the deceased in her individual capacity against an attorney who had also been retained by the same plaintiff in her capacity as executrix. On appeal to this court, it was specifically noted that the order was being affirmed on grounds different from those relied upon by Special Term. This court affirmed the denial of the defendant's motion to dismiss the complaint "on the basis that the relationship of the plaintiff to the underlying wrongful death action is unique and demands an exception to the general rule regarding privity" (*Baer v Broder,* 86 AD2d 881, *supra*). Thus, privity remains a viable factor in legal malpractice cases in this State.

As respects the liability of title abstracters, it is a generally accepted rule, subject, of course, to specific exceptions carved out by certain jurisdictions (e.g., third-party beneficiary contracts [*Slate v Boone County Abstract Co.,* 432 SW2d 305 (Mo)]; actual knowledge that the abstract is for the use and benefit of third parties [*Essex v Ryan,* __ Ind App __, 446 NE2d 368; *Beckovsky v Burton Abstract & Tit. Co.,* 208 Mich 224, on reh 208 Mich 236; *Goldberg v Sisseton Loan & Tit. Co.,* 24 SD 49; *Western Loan & Sav. Co. v Silver Bow Abstract Co.,* 31 Mont 448; *Brown v Sims,* 22 Ind App 317]; where the title company has been informed of the buyer's identity [*Chun v Park,* 51 Hawaii 462]; or where the abstracter should have foreseen that a third party would rely on the abstract [*Williams v Polgar,* 391 Mich 6; *Kovaleski v Tallahassee Tit. Co.,* 391 So2d 315 (Fla App); *Kovaleski v Tallahassee Tit Co.,* 363 So2d 1156 (Fla App)]), that an abstracter is liable for damages resulting from errors in or omissions from the prepared abstract, in the absence of fraud or collusion, solely to the person who contracted for the preparation of said abstract (see, e.g., *Savings Bank v Ward, supra; Ultramares Corp. v Touche, supra; Cole v Vincent,* 229 App Div 520; *Glawatz v People's Guar. Search Co.,* 49 App Div 465; *Wright v Allmon-Mack Agency,* 270 Ark 265; *Warrington v Transamerica Tit. Ins. Co.,* 40 Ore App 841; *Walters v Marler,* 83 Cal App 3d 1, 20; *Thornton v Little Sisters of Poor,* 380 A2d 593 [DC App]; *Gaines v American Tit. Ins. Co.,* 136 Ga App 162; Ann., 34 ALR3d 1122).

In the instant case, Special Term relied upon the case of *Goodman v Title Guar. & Trust Co.* (11 AD2d 1003). The plaintiffs therein sought to recover damages sustained as a result of the defendant title company's negligence in issuing an incorrect title report. The report had been issued to a prospective buyer of the plaintiffs' property under contract to purchase. The purchaser elected to rescind the contract in view of the defendant's declaration as to the noninsurability of an easement. The first cause of action, which sounded in negligence, was dismissed on the ground that no privity of contract existed between the parties. The court left open the possibility that the insurer could have been held liable for any fraud surrounding the issuance of

the report had a cause of action sounding in fraud been pleaded.

In subsequent decisions involving improperly conducted title searches, either privity of contract has been found to exist (*Reisman v Commonwealth Abstract Co.,* 71 AD2d 885) or causes of action have been recognized sounding in fraud for gross errors notwithstanding the lack of privity between the parties (*Cecala v Title Guar. Co.,* 45 Misc 2d 986; *Buchanan v Graham,* 38 Misc 2d 258).

In *Glanzer v Shepard* (*supra*) the vendors of certain merchandise employed the services of the defendants in their capacity as public weighers to certify the official weight sheets and furnish the plaintiff prospective buyers with a copy thereof. The merchandise was accepted and paid for on the faith of the defendants' certificate. Under such circumstances, where the rendition of the subject information to the purchasers was not merely an independent and collateral consequence but, rather, the direct aim of the contract, the claim of the purchasers against the weighers was allowed.

Also worthy of notice is the case of *White v Guarente* (43 NY2d 356), in which it was recognized that accountants retained by a limited partnership to perform auditing and tax return services may be held responsible to an identifiable group of limited partners for negligence in the execution of professional services. The following excerpt from that case bears significance to the instant matter: "Defendant Andersen's contention, that plaintiff falls beyond the bounds of protected parties, rests primarily on the theory that its contract with the limited partnership circumscribed the extent of its obligation and the outer limits of its care. This reasoning fails to recognize that '[t]he duty of reasonable care in the performance of a contract is not always owed solely to the person with whom the contract is made * * * It may inure to the benefit of others' (cf. *Rosenbaum v Branster Realty Corp.,* 276 App Div 167, 168; see, also, *Wroblewski v Otis Elevator Co.,* 9 AD2d 294, 296). While *Ultramares* [255 NY 170, *supra*] made it clear that accountants were not to be liable in negligence on the generalized basis that a contract for professional services creates liability in favor of the general populace, this

plaintiff seeks redress, not as a mere member of the public, but as one of a settled and particularized class among the members of which the report would be circulated for the specific purpose of fulfilling the limited partnership agreed upon arrangement" (*White v Guarente, supra,* p 363).

Notwithstanding the seemingly broad and far-reaching impact of that language, it bears noting that the defendant accountants had contractually undertaken to perform auditing services for the purpose, and with the intent, of benefiting a partnership of which the plaintiff was a member (see, also, *Home Mut. Ins. Co. v Broadway Bank & Trust Co.,* 53 NY2d 568; *Dworman v Lee,* 83 AD2d 507, affd 56 NY2d 816). Viewed in this light, such cases may not be construed as a significant departure from the old line of cases espousing the requirement of privity with respect to claims arising from professional negligence.[*]

Nor does the case of *Chemical Bank v National Union Fire Ins. Co. of Pittsburgh* (74 AD2d 786, app withdrawn 53 NY2d 864), provide sufficient authority for upholding the negligence cause of action in the instant case. Although that case, in a majority opinion of the First Department, recognized the existence of a cause of action sounding in gross and reckless negligence against a real estate appraiser on behalf of a homeowner who had relied upon the erroneous appraisal to his detriment, this is an insufficient basis upon which to presume the demise of the privity requirement in all cases, particularly those in which gross negligence is not involved.

With respect to the Graces' indemnity claim, we conclude that that too was properly dismissed in view of the

---

[*] It bears noting that there are two recent decisions from other jurisdictions wherein the highest courts of those States have held that accountants may be liable for negligence to third parties with whom there is no privity but who are foreseeable users (see Brodsky, Corporate and Securities Litigation, Accountants' Liability, NYLJ, Sept. 21, 1983, p 1, col 1). In *H. Rosenblum, Inc. v Adler* (93 NJ 324, 341) the New Jersey Supreme Court reasoned that it would be a fundamental inconsistency to bar a claim of negligent misrepresentation against accountants in the absence of privity when a claim based upon liability for defects in products would not be barred under similar circumstances. In *Citizens State Bank v Timm, Schmidt & Co., S.C.* (113 Wis 2d 376, 387, quoting from *Ollerman v O'Rourke Co.,* 94 Wis 2d 17, 48), the Wisconsin Supreme Court ruled that liability should be imposed upon accountants for the foreseeable injuries resulting from their negligent acts unless, under the facts of the particular case, recovery should be denied on grounds of public policy, as where allowance of the claim " 'would enter a field that has no sensible or just stopping point' ". However, there have not been such departures from the traditional adherence in this jurisdiction to the privity limitations of *Ultramares Corp. v Touche* (255 NY 170).

absence of any contractual obligation between the Graces and the title company. Moreover, this does not constitute a situation involving joint tort-feasors where liability predicated upon the title insurer's active negligence is imposed by law.

In conclusion, notwithstanding the widespread denigration of the privity rule among some jurisdictions and its alleged irrelevance in establishing the scope of tort liability, there are no indications of an outright departure in this State from the concept of privity. On this basis, we decline to raise the spectre of potentially indeterminate liability by overruling what is the long-established rule of this jurisdiction. Accordingly, we hold instead that a title company hired by one party is not, absent evidence of fraud, collusion, or other special circumstances, subject to suit for negligent performance by one other than the party who contracted for its services. The dismissal of the third-party complaint was, therefore, proper.

LAZER, J. P., GULOTTA and RUBIN, JJ., concur.

Order of the Supreme Court, Nassau County, dated July 1, 1982, affirmed insofar as appealed from, with costs.