GEORGE W. PURDY, Appellant-Respondent, v PUBLIC ADMINIS-TRATOR OF THE COUNTY OF WESTCHESTER, as Administrator of the Estate of EMILY SHAW, Deceased, Respondent-Appellant, and BETHEL METHODIST HOME et al., Respondents, et al., Defendant.

Second Department, April 20, 1987

## APPEARANCES OF COUNSEL

*Keegan & Keegan (Norman Bard* of counsel), for appellant-respondent.

*Barry, McTiernan & Moore (Michael F. Close* of counsel), for respondent-appellant.

*O'Connor, McGuiness, Conte, Doyle, Oleson & Collins (Kevin M. Loftus* of counsel), for Bethel Methodist Home, respondent.

*Mead, Dore & Vout, P. C. (Emanuel Thebner* of counsel; *Richard L. Magro* on the brief), for Elio Argenziano, respondent.

## OPINION OF THE COURT

RUBIN, J.

On November 9, 1979, the plaintiff, who was a customer at a gasoline station in Brewster, New York, sustained serious injuries when a car owned and operated by Emily Shaw smashed into the station at a high rate of speed. On the date of the accident, the 73-year-old Shaw was a voluntary resident of the defendant Bethel Methodist Home (hereinafter Bethel). Bethel is a health-related facility *(see,* Public Health Law § 2801 [3]). Such a facility provides lodging, board, and physical care to its residents, including, but not limited to, the recording of health information, dietary supervision, and supervised hygienic services *(see,* Public Health Law § 2801 [4] [b]). A health-related facility resident requires institutional care and services above the level of room and board, but below that of a skilled nursing facility or hospital (10 NYCRR 414.1 [c] [8]).

On October 11, 1979, Shaw was admitted to Bethel following a period of hospitalization and rehabilitation for a "cerebral vascular accident" (a stroke) suffered in July 1979. According to the Department of Health's regulations, a medical history

and a physical examination of the resident is to be performed no later than one week after the resident's admission to the facility to ascertain her needs and the level of care required. The examining physician is to record in the resident's chart his findings, diagnoses and initial orders for treatment, which include orders for medication, diet, permitted level of physical activity, and recommendations, if necessary, for physical therapy, occupational therapy, supportive activities and other resident care services (see generally, 10 NYCRR 741.1 [k]). On October 12, 1979, the defendant Dr. Elio Argenziano, Bethel's medical director, the person responsible for overseeing the health care of all of Bethel's residents, took Emily Shaw's medical history, conducted the admission physical examination and issued an order authorizing Shaw to leave Bethel unaccompanied.

Subsequent to the accident, the plaintiff commenced suit against Emily Shaw, Bethel and Dr. Argenziano to recover damages for personal injury. Thereafter, Shaw died of causes unrelated to the accident and the Public Administrator of the County of Westchester was appointed as administrator of her estate.

The gravamen of the plaintiff's claim against Bethel and Dr. Argenziano is that both were negligent in failing to prohibit Shaw from operating a motor vehicle away from her place of residence at Bethel when those defendants knew or should have known that Shaw had a medical condition which posed a serious risk of "blacking out" or "fainting" and that the accident was due to the fact that Shaw fainted or blacked out at the wheel of her motor vehicle. The plaintiff sought to prove at trial that the medical judgment of Dr. Argenziano, which allowed Shaw to leave the facility unaccompanied and without any restrictions having been imposed upon her operation of a motor vehicle, was erroneous and not founded upon careful examination. The plaintiff additionally contends that Dr. Argenziano, an agent of Bethel and as Shaw's physician, had an affirmative duty owed to the plaintiff to warn Shaw not to drive due to her medical condition. Dr. Argenziano admitted that he never asked Shaw if she owned or operated a motor vehicle prior to the date of the accident.

The jury returned a verdict in favor of the plaintiff against all the defendants and apportioned 10% liability to the estate of Shaw, 30% liability to Bethel and 60% liability to Dr. Argenziano. The Trial Judge set aside the verdict and directed judgment in favor of Bethel and Dr. Argenziano on the

ground, *inter alia,* that the plaintiff failed to establish the element of proximate cause.

We affirm for the reason that neither Bethel, nor Dr. Argenziano, its medical director, owed a duty to the plaintiff, a member of the public, either to prevent Shaw, a resident, from operating a motor vehicle off the facility's premises or to warn Shaw against driving.

It is well established that before a defendant may be held liable for negligence, it must be shown that the defendant owes a duty to plaintiff *(Palsgraf v Long Is. R. R. Co.,* 248 NY 339, 342). In the absence of duty, there can be no breach of duty and without a breach there is no liability *(Kimbar v Estis,* 1 NY2d 399, 405; *Pulka v Edelman,* 40 NY2d 781, 782, *rearg denied* 41 NY2d 901). The issue of whether Bethel and Dr. Argenziano owed a duty to the plaintiff to supervise and control Emily Shaw is a question of law *(see, Waters v New York City Hous. Auth.,* 69 NY2d 225; *Strauss v Belle Realty Co.,* 65 NY2d 399, 408; *Cartier v Long Is. Coll. Hosp.,* 111 AD2d 894; *Semler v Psychiatric Inst.,* 538 F2d 121, *cert denied sub nom. Folliard v Semler,* 429 US 827).

It is a generally accepted tenet of New York law that a duty directly assumed for the benefit of a particular person or entity does not extend to third parties who were not the intended beneficiaries of the subject undertaking. In the absence of privity, fraud, collusion or other special circumstances, New York authorities do not impose liability upon a professional for injuries sustained by members of the general public who might potentially be affected by negligence in the promised performance *(Calamari v Grace,* 98 AD2d 74). While the absence of privity does not foreclose recognition of a duty, it is a relevant factor for courts to consider "in fixing the orbit of duty 'to limit the legal consequences of wrongs to a controllable degree' *(Tobin v Grossman,* 24 NY2d 609, 619; *see also, Howard v Lecher,* 42 NY2d 109), and to protect against crushing exposure to liability *(see, Pulka v Edelman,* 40 NY2d 781, *supra; Ultramares Corp. v Touche,* 255 NY2d 170)" *(see, Strauss v Belle Realty Co., supra,* at 402-403). The underlying principle for the tenet that there is no liability for injuries sustained by members of the general public who might potentially be affected by negligence in the promised performance is that the imposition of a duty upon one unable to control the person whose acts resulted in the plaintiff's injury would be unduly onerous *(Pulka v Edelman, supra; Waters v New York City Hous. Auth., supra; Calamari v Grace, supra).*

A duty to control others arises only in the following special relationships: "(1) '[t]he relationship between the defendant and the person who threatens the harm to the third person may be such as to require the defendant to attempt to control the other's conduct' or (2) 'there may be a relationship between the defendant and the person exposed to harm which requires the defendant to afford protection from certain dangers including the conduct of others' " *(Pulka v Edelman, supra,* at 783, quoting from Harper & Kime, *Duty to Control the Conduct of Another,* 43 Yale LJ 886, 887-888).

In the instant case, Bethel contracted to provide certain care and services for its resident Emily Shaw. Additionally, residents were third-party beneficiaries of the contract between Bethel and its medical director, wherein Dr. Argenziano promised to oversee the health care of all residents. However, there is no privity of contract between the plaintiff and either Bethel or Dr. Argenziano. As a customer at a filling station, the plaintiff was not readily identifiable, but was merely a member of the general public. Consequently, neither Bethel nor Dr. Argenziano had a special relationship to the plaintiff.

Although both a health care facility and its medical director, who conducts an admission physical and issues orders of treatment, have a relationship to a resident of the facility, that relationship is not sufficient to give rise to an affirmative duty to protect members of the general public from the tortious acts of a resident committed off the facility's premises, due to the absence of a lawful basis to restrain the freedom of a licensed resident from operating a motor vehicle *(see, Harland v State of Cal.,* 75 Cal App 3d 475, 142 Cal Rptr 201; *Cartier v Long Is. Coll. Hosp.,* 111 AD2d 894, *supra).*

In actions commenced by a member of the public to recover damages for injuries proximately caused by the defendant's negligent supervision of the tort-feasors, courts in this State have declined to impose liability upon a defendant who fails to restrain the tort-feasor's conduct, unless the defendant has control over the tort-feasor analogous to one in the role of *parens patriae* and the defendant knows of the tort-feasor's dangerous propensities *(see, Thompson v Ange,* 83 AD2d 193, 196-197 [school administrators not liable for negligent supervision of student who injures the plaintiff during unauthorized school-hour driving unless school has notice student is an incompetent driver]; *Wasserstein v State of New York,* 32 AD2d 119, *affd* 27 NY2d 627 [parole officer not liable for

violent conduct of a parole violator unless parolee's past history and record show previous acts of violence or proclivity toward such conduct]; *Cartier v Long Is. Coll. Hosp., supra* [alcoholism outpatient treatment center and treating physicians owe no duty to pedestrian for failing to take steps to prevent patient from driving, aside from a warning not to drive]; *Excelsior Ins. Co. v State of New York,* 296 NY 40; *Higgins v State of New York,* 24 AD2d 147 [State not liable for acts of an escaped mental patient unless it knows patient requires confinement and might do harm if allowed to escape]; *Schrempf v State of New York,* 66 NY2d 289 [State mental facility and psychiatrist owe a duty to prevent voluntary outpatient, over whom they have control, from harming others, albeit the duty is more limited than in cases involving persons confined to mental institutions]). Additionally, it has been held that a mental institution may be liable to persons harmed by inmates committed to its care because of its negligence in discharging the inmates *(see, Homere v State of New York,* 79 Misc 2d 972, *affd* 48 AD2d 422), but it has no continuing duty to exercise a *parental role* over discharged inmates *(see, Cameron v State of New York,* 37 AD2d 46, 51, *affd* 30 NY2d 596).

In the instant case, the regulations governing health care facilities mandate the establishment of policies which ensure that each resident may exercise his or her right to independent personal decisions (10 NYCRR 414.14 [a] [19]), including the right to civil and religious liberties (Public Health Law § 2803-c [3] [a]) and the right to be free from physical restraints, except in an emergency (Public Health Law § 2803-c [3] [h]). Clearly, Emily Shaw was not under guardianship upon her voluntary admission into Bethel and it cannot be maintained that by becoming a resident at Bethel she had surrendered her civil rights and her responsibility for her own conduct. Similar to the resident of a Veteran's Home in *Harland v State of Cal. (supra),* there is no statute or regulation authorizing the medical director or the operator of Bethel to restrain a resident from operating her car off the premises. Although a resident contractually consents to restraints as ordered by the physician, there apparently is no authoritative procedure for enforcing an order prohibiting a licensed resident from operating her vehicle on a public road short of expulsion from the home for violation of the order. "No lawful basis has been shown for the exercise of such paternalistic powers over a citizen, in the absence of an adjudication of

incompetency" *(Harland v State of Cal.,* 75 Cal App 3d 475, 482, 142 Cal Rptr 201, 205, *supra).*

To impose a duty upon the defendants Bethel and Dr. Argenziano, when there is no lawful basis to prohibit a licensed driver from operating her motor vehicle on a public road, would place an unreasonable burden on those defendants *(see, Pulka v Edelman,* 40 NY2d 781, *supra).* Consequently, the jury verdict cannot be sustained on the theory that those defendants owed the plaintiff a duty to restrain Shaw from operating her motor vehicle on a public road *(see, Cartier v Long Is. Coll. Hosp., supra).* Nor can the verdict be sustained on a theory that either Bethel or Dr. Argenziano owed a duty to the plaintiff to warn Shaw not to drive a car due to her medical condition. Where there is no reasonable opportunity to stop a licensed resident from operating a motor vehicle, the fact that no significant precautionary measures, such as issuing a warning, were taken to prevent the negligent conduct of a patient does not justify the imposition of such a duty of care to be owed by defendants to a member of the general public *(see, Pulka v Edelman, supra).*

Formerly, private physicians owed a duty solely to their patients, not to members of the general public. We are cognizant that other jurisdictions have recently extended that duty and have held that a doctor owes a duty to a member of the public, in the foreseeable area of danger, to warn a patient not to drive when the doctor knows or should know a patient's medical condition or medication will impair the patient's mental faculties and motor coordination and, thus, render driving a car dangerous to others *(see, Myers v Quesenberry,* 144 Cal App 3d 888, 892, 193 Cal Rptr 733, 735; *Gooden v Tips,* 651 SW2d 364 [Tex]; *Kaiser v Suburban Transp. Sys.,* 65 Wash 2d 461, 398 P2d 14, *mod on other grounds* 401 P2d 350; *Freese v Lemmon,* 210 NW2d 576 [Iowa]; *Wharton Transp. Corp. v Bridges,* 606 SW2d 521 [Tenn]). Nevertheless, we are of the opinion that New York law does not presently impose such a duty upon private institutions and physicians who neither assume nor exercise a parental role over the patient. A doctrine which imposes such unlimited liability against physicians who may have negligently advised their patient can "only aggravate an already grave problem, which finds medical help frequently unavailable at all and its cost, when it is available, fast reaching prohibitive amounts * * * It will cause physicians, when possible, to shun cases exposing them to such limitless liability or their advice will be ultraconserva-

tive in justified apprehension over the fate which awaits them if they give what might otherwise have been sound medical counsel. Furthermore, if such liability is to be borne by the medical profession, the already oppressive cost of medical attention must be further increased. No matter how this is accomplished—by insurance or without it—it is the patient who must ultimately pay" *(Freese v Lemmon,* 210 NW2d 576, 584 [LeGrand, J., dissenting], *supra).* The ultimate question is whether such a duty should be imposed as a matter of public policy *(Strauss v Belle Realty Co.,* 65 NY2d 399, *supra).* Under the circumstances at bar, the answer should be no. Accordingly, we affirm the interlocutory judgment, as amended, upon the ground that neither Bethel nor Dr. Argenziano owed a duty to the plaintiff. Assuming, arguendo, that a duty to warn exists, we concur in the trial court's conclusion that the plaintiff failed to establish that a breach of said duty was the proximate cause of the plaintiff's injuries.

MOLLEN, P. J., THOMPSON and SPATT, JJ., concur.

Ordered that the interlocutory judgment of the Supreme Court, Putnam County, dated July 6, 1984, as amended by an order of the same court, dated October 31, 1984, is affirmed, with costs to the defendants Public Administrator of the County of Westchester as administrator of the estate of Emily Shaw, Elio Argenziano and Bethel Methodist Home.