TIMOTHY JANSEN, Respondent, v FIDELITY & CASUALTY COMPANY OF NEW YORK, Appellant.

Third Department, February 28, 1991

### APPEARANCES OF COUNSEL

*Carter, Conboy, Bardwell, Case, Blackmore & Napierski (Dianne Bresee Mayberger* of counsel), for appellant.

*Pattison, Sampson, Ginsberg & Griffin, P. C. (Antonio Milillo* of counsel), for respondent.

### OPINION OF THE COURT

CASEY, J. P.

We hold that liability cannot be imposed upon a workers' compensation and liability insurance carrier in an action by an employee of the insured for injuries sustained in the course of his employment where the alleged negligence of the insurer arises out of the regular safety inspections of the work site conducted by the insurer in an effort to reduce the risk of loss covered by its insurance policy.

Plaintiff was injured in October 1981 while working at a bridge construction site in North Carolina when the suspended rig he was using as a work platform failed, causing him to fall. Defendant, the workers' compensation and liability insurance carrier for plaintiff's employers, sent an employee to make periodic inspections of the jobsite for purposes

of risk evaluation. Defendant's inspector visited the site several times both before and after plaintiff's accident, each time reporting findings concerning safety practices and conditions both to defendant and to plaintiff's employers.

Plaintiff's suit against defendant is based on a theory of negligent inspection in that defendant, having undertaken to inspect the construction project for safety purposes, failed entirely to inspect or inadequately inspected the defective rig from which plaintiff fell. The complaint alleges that plaintiff relied upon defendant's inspections and was injured because of the negligent performance thereof. After issue was joined, the parties engaged in some pretrial discovery. Thereafter, plaintiff moved to strike defendant's answer for its failure to comply with the prior notice of discovery and inspection. Defendant responded by moving for summary judgment dismissing the complaint on the ground that its proof established that it owed no duty of care to plaintiff regarding its inspections at the work site. Supreme Court determined that questions of fact precluded summary judgment and granted plaintiff's motion to compel discovery and inspection. This appeal by defendant followed.

■ Initially, it should be noted that although the alleged tort occurred in North Carolina and the issue concerning the existence of any duty owed by defendant to plaintiff appears to involve a conduct-regulating rule which would be governed by North Carolina law (see, Schultz v Boy Scouts, 65 NY2d 189, 198; Salsman v Barden & Robeson Corp., 164 AD2d 481), the parties and Supreme Court have assumed that New York law applies. An examination of North Carolina law reveals that the North Carolina courts apparently would never reach the duty issue because North Carolina's workers' compensation law bars an action by the insured's employee against the insurer in these circumstances (Smith v Liberty Mut. Ins. Co., 449 F Supp 928, affd 598 F2d 616).* Accordingly, it is appropriate to look to New York law to resolve the question of whether defendant owed a duty to plaintiff.

■ The Court of Appeals explained in Nallan v Helmsley-Spear, Inc. (50 NY2d 507): "The formula for determining when 'one who assumes a duty to act, even though gratuitously,

---

* Since defendant has not raised the defense of workers' compensation as plaintiff's exclusive remedy in this case, there is no need to address the choice of laws question presented by the holding Smith v Liberty Mut. Ins. Co. (supra) (see, Roach v McGuire & Bennett, 146 AD2d 89).

may thereby become subject to the duty of acting carefully' has been articulated by Chief Judge CARDOZO as follows: 'If conduct has gone forward to such a stage that inaction would commonly result, not negatively merely in withholding a benefit, but positively or actively in working an injury, there exists a relation out of which arises a duty to go forward * * * The query always is whether the putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm, or has stopped where inaction is at most a refusal to become an instrument for good' " *(supra,* at 522, quoting *Moch Co. v Rensselaer Water Co.,* 247 NY 160, 167-168). Application of this principle requires plaintiff to show not only that defendant undertook to provide a service and did so negligently, but also that its conduct in undertaking the service somehow placed plaintiff in a more vulnerable position than he would have been had defendant never taken any action at all *(see, supra,* at 167-168). Plaintiff's complaint does not allege, and there is nothing elsewhere in the record which suggests, that as a result of defendant's inspections the work site was somehow less safe than it would have been had defendant never made the inspections or that plaintiff was otherwise placed in a more vulnerable position because of the inspections.

Assuming that defendant's communications with its insured concerning the results of its safety inspections, coupled with the insured's alleged reliance on those inspections, are sufficient to raise a question of fact as to whether defendant assumed a duty for the benefit of its insured, there is no basis for extending that duty to the insured's employees, who are at best incidental beneficiaries of the inspections. "It is a generally accepted tenet of New York law that a duty directly assumed for the benefit of a particular person or entity does not extend to third parties who were not the intended beneficiaries of the subject undertaking" *(Purdy v Public Adm'r of County of Westchester,* 127 AD2d 285, 288, *affd* 72 NY2d 1; *see, Calamari v Grace,* 98 AD2d 74, 78; *see also, Oathout v Johnson,* 88 AD2d 1010). Irrespective of whether defendant intended to benefit its insured, defendant owed no duty which extended to plaintiff in the absence of any evidence that defendant undertook the inspections for the benefit of the insured's employees *(see, Kingsland v Factory Mut. Sys.,* 145 AD2d 965, 966, *lv dismissed* 74 NY2d 841).

In effect, plaintiff seeks to impose upon his employers' workers' compensation insurance carrier the duty to provide a

safe place to work, but the insurance policy does not give defendant the responsibility or the authority to supervise and control either the manner in which the insured's work was to be performed or the safety precautions and procedures to be used at the work site. Nor does the record contain evidence that defendant engaged in any active negligence at the work site which caused or contributed to the unsafe condition which resulted in plaintiff's injury. In these circumstances, defendant is not responsible for plaintiff's injuries *(see, Russin v Picciano & Son,* 54 NY2d 311, 316-317).

Even if the extension of a duty owed by defendant to plaintiff in these circumstances were not barred by any of the foregoing principles, it is our view that no such duty exists. It is the responsibility of the courts to fix the "orbit of duty" *(Strauss v Belle Realty Co.,* 65 NY2d 399, 402), and in exercising this responsibility "not only logic and science, but policy play an important role" *(De Angelis v Lutheran Med. Center,* 58 NY2d 1053, 1055). Although "[d]uty in negligence cases is defined neither by foreseeability of injury * * * nor by privity of contract. * * * [c]onsiderations of privity are not entirely irrelevant in implementing policy" *(Strauss v Belle Realty Co., supra,* at 402-403). As the Court of Appeals recently explained: "While plaintiff is not bound by the provisions of a contract to which it is not a party, the limited scope of defendants' undertaking is nonetheless relevant in determining whether a tort duty to others should arise from their performance of the contractual obligations. Moreover, it suggests the need to contain liability within the limits envisioned in the contract in order to keep these services available at an affordable rate" *(Eaves Brooks Costume Co. v Y.B.H. Realty Corp.,* 76 NY2d 220, 227).

In its insurance policy issued to plaintiff's employers, defendant undertook the obligation of paying workers' compensation benefits to those employees who sustained injuries arising out of and in the course of their employment, a liability which has well-defined limits pursuant to the relevant workers' compensation law (North Carolina's in this case). Defendant undertook its regular inspection of the insured's work site in order to reduce the risk of loss covered by its insurance policy. A reduced risk of loss clearly benefits the insurer who will be required to pay out less workers' compensation benefits. The insured is also benefitted since its premiums are directly related to the risk of loss and fewer injuries at its work site means less disruption in the progress of the work. A safer

work site also benefits the employees although, as noted above, there is no evidence in the record that defendant was motivated by an intent to benefit the insured's employees. Imposition of liability upon defendant for damages resulting from plaintiff's work-related injuries exposes an insurer to a potential liability far in excess of that which it assumed in its insurance policy. Prudent insurers will remove any potential for exposure to this liability by deleting their work site inspection programs. The likely net result is decreased work site safety, increased work-related injuries, higher workers' compensation insurance premiums and increased construction costs. On the other hand, a refusal to find any duty owed by defendant to plaintiff in these circumstances would not leave plaintiff without a remedy, since he is entitled to workers' compensation benefits.

For each of the reasons set forth above, it is our view that defendant is entitled to summary judgment dismissing the complaint.

LEVINE, J. (dissenting). In my view, Supreme Court correctly denied defendant's motion for summary judgment. Plaintiff's claim is derived from the principle announced in *Glanzer v Shepard* (233 NY 236) that "one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all" *(supra,* at 239 [Cardozo, J.]). This is the so-called "good samaritan" rule, embodied in its modern form in the Restatement (Second) of Torts (§§ 323-324 A) *(see, United States v Varig Airlines,* 467 US 797, 803; *Patentas v United States,* 687 F2d 707, 714). Directly applicable here are the provisions of Restatement (Second) of Torts § 324 A:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

"(a) his failure to exercise reasonable care increases the risk of such harm, or

"(b) he has undertaken to perform a duty owed by the other to the third person, or

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

In view of the Court of Appeals' adoption of the version of

part of the good samaritan rule set forth in Restatement (Second) of Torts § 324 in *Parvi v City of Kingston* (41 NY2d 553, 559), as reaffirmed in *Nallan v Helmsley-Spear, Inc.* (50 NY2d 507, 522-523), there is little reason to doubt that section 324 A also reflects current law in this State.

Liberally construing, as we must, plaintiff's complaint and bill of particulars and giving plaintiff's pleadings the benefit of all favorable inferences, he has alleged a cause of action under Restatement (Second) of Torts § 324 A, i.e., that defendant undertook to render safety inspection services for plaintiff's employers at this construction work site which it should have recognized was necessary for the protection of workers such as plaintiff, that plaintiff relied upon defendant's undertaking and that he suffered harm by reason of defendant's failure to exercise reasonable care in performing its inspections. Defendant's submission in support of the summary judgment motion attacked one, *and only one,* element of plaintiff's cause of action, i.e., that defendant's inspection services were rendered for the benefit of plaintiff's employers. Defendant submitted evidence that the inspections were conducted solely for its own underwriting purposes, a fact which, if established, would thus have defeated plaintiff's claim *(see, Matter of James v State of New York,* 90 AD2d 342, 344, *affd* 60 NY2d 737; *see also, Home Mut. Ins. Co. v Broadway Bank & Trust Co.,* 53 NY2d 568, 576).

Plaintiff, however, submitted evidence which would support the inference that the inspections were at least partly for the benefit of plaintiff's employers. More particularly, defendant's representative followed up each of his inspection visits with letters to plaintiff's employers describing the conditions observed and his discussions with construction managers at the site, which letters contained a printed form stating, *inter alia,* that the inspections "are intended to assist you" in loss control. Moreover, in a letter to the project manager for plaintiff's employers dated July 6, 1981, defendant's inspector not only described several unsafe practices and conditions he observed at a recent visit to the site, but also stated that at his next visit in September "to assist you in your loss control activities" he would work with the project superintendent "to identify unsafe work practices or conditions so that they may be eliminated or controlled". Thus, a triable issue of fact precluding summary judgment was created on whether defendant's inspection services were undertaken solely for its own benefit to the exclusion of benefitting third persons. Defen-

dant's references on appeal to other claimed deficiencies in plaintiff's cause of action should be unavailing. Plaintiff was only required to submit opposing evidence on the issue raised by defendant's moving papers, not on other issues as to which defendant has not made a prima facie showing of entitlement to judgment (see, *Winegrad v New York Univ. Med. Center,* 64 NY2d 851, 853; *Holtz v Niagara Mohawk Power Corp.,* 147 AD2d 857, 858).

From my reading of the majority's decision, it concludes that plaintiff should be denied recovery here, as a matter of law, on essentially three grounds. First, the majority holds that, under New York law, defendant's negligent performance of its assumed duty of safety inspection at the work site is an insufficient basis for imposing liability unless, "as a result of defendant's inspections the work site was somehow less safe than it would have been had defendant never made the inspections". Second, the majority concludes that even if defendant had assumed the duty for the benefit of its insured (plaintiff's employers), and the insured had relied thereon, plaintiff may not recover for the negligent performance of defendant's duty because plaintiff and his co-workers "are at best incidental beneficiaries of the inspections".

These two grounds, I believe, too narrowly restrict the scope of liability for negligent performance of an undertaken duty under current law. As previously discussed, there is every good reason to assume that New York would follow the principles of liability embodied in Restatement (Second) of Torts § 324 A. By apparently requiring as necessary conditions of plaintiff's recovery that (1) defendant's negligent inspection made the work site "less safe", and (2) plaintiff must have been an intended beneficiary of the duty of safety inspection defendant undertook, the majority overlooks plaintiff's as yet uncontradicted allegations of detrimental reliance. The Restatement designates such detrimental reliance as a separate, alternative basis for imposing liability (see, Restatement [Second] of Torts § 324 A [c]). It is further noteworthy that the two Court of Appeals cases principally relied upon by the majority expressly recognized that liability may be imposed for the negligent performance of a duty undertaken by a defendant if the injured party detrimentally relied upon such performance. Thus, in *Nallan v Helmsley-Spear, Inc.* (50 NY2d 507, *supra)* the court holds that recovery could be had by showing "that because [plaintiff] was familiar with the building's after-hours procedures and expected that an attendant would be present,

*he was lulled into a false sense of security* and, as a consequence, neglected to take the precautions he might otherwise have taken upon entering the building" *(supra,* at 522 [emphasis supplied]). And, in *Eaves Brooks Costume Co. v Y.B.H. Realty Corp.* (76 NY2d 220), the court states: "But even inaction may give rise to tort liability where no duty to act would otherwise exist if, for example, performance of contractual obligations has induced *detrimental reliance* on continued performance and inaction would result not 'merely in withholding a benefit, but positively or actively in working an injury' * * *. In such a case, the defendant has undertaken not just by his promises but by his deeds a legal duty to act with due care" *(supra,* at 226 [emphasis supplied]).

Finally, the majority decides that, irrespective of whether liability against defendant lies here under existing common-law tort principles, the court should deny recovery by restricting the scope of the insurer's assumed duty to plaintiff and other similarly situated workers on policy grounds. Otherwise, the majority apprehends, the floodgates of litigation against insurers by injured workers, based upon a theory of negligently performed safety inspection, will deter insurers from undertaking this socially useful activity. However, the cases wherein "the orbit of duty" has been thus restricted disclose a good deal of restraint before applying public policy at the expense "of some who might otherwise have recovered for losses or injuries if traditional tort principles had been applied" *(Strauss v Belle Realty Co.,* 65 NY2d 399, 403). In general, policy-based limitations on duty are applied because of well-founded concerns for controlling what might otherwise be "crushing" or "rampant" liability *(supra,* at 402, 405 [and cases cited therein]). The cases show a cautious and careful weighing of such factors as whether the imposition of liability would force entities "to insure against a risk the amount of which they may not know and cannot control", whether injured persons have a complete remedy against other parties in a better position to assess, insure for and safeguard against the particular risk, and whether the possible liability would be grossly disproportionate to the economic benefits of the transaction for the particular party *(Eaves Brooks Costume Co. v Y.B.H. Realty Corp., supra,* at 227).

Most of the foregoing considerations for limiting duty on policy grounds do not apply in the instant case. First, an insurer who, indeed, intends to inspect the work site solely for its own underwriting purposes may exercise substantial con-

trol over its exposure to liability by expressly disclaiming that its inspection is for the benefit of the insured or the insured's employees (see, Matter of James v State of New York, 90 AD2d 342, 344-345, supra). Moreover, defendant here is both the liability carrier and the workers' compensation carrier for the employers/contractors on this construction project. Presumably, such dual coverage by one insurer is common in the construction industry. It follows that holding the insurer responsible for its breach of an assumed duty of safety inspection does not expose it to a "crushing" or unmanageable new form of liability, but merely to one of many foreseeable risks of loss at the work site assumed by the insured under its policy, and one well within the underwriting capabilities of the insurer. Hence, I find no valid policy ground to protect defendant from the consequences of its assumption of the duty to inspect safety conditions at the work site here.

Since I likewise conclude that Supreme Court's discovery ruling was well within its discretionary authority, I would affirm the order appealed from in all respects.

MIKOLL, YESAWICH, JR., and MERCURE, JJ., concur with CASEY, J. P.; LEVINE, J., dissents and votes to affirm in an opinion.

Order reversed, on the law, with costs, plaintiff's motion denied, defendant's motion granted, summary judgment awarded to defendant and complaint dismissed.