LABORERS LOCAL 17 HEALTH & BENEFIT FUND and The Transport Workers Union New York City Private Bus Lines Health Benefit Trust, Plaintiffs,

v.

PHILIP MORRIS, INC., R.J. Reynolds Tobacco Co., Brown & Williamson Tobacco Corp., B.A.T. Indus. P/L/C/. Lorillard Tobacco Co., Inc., Liggett & Myers Inc., The American Tobacco Co., United States Tobacco Co., The Council for Tobacco Research–USA, Inc., The Tobacco Institute, Inc., Smokeless Tobacco Council, Inc., and Hill & Knowlton, Inc., Defendants.

Nos. 97 Civ. 4550(SAS), 97 Civ. 4676, 97 Civ. 7346, 97 Civ. 8462 and 97 Civ. 9395–9402.

United States District Court, S.D. New York.

March 25, 1998.

Perry Weitz, Arthur M. Luxenberg, Steven E. Fineman, Karen J. Mandel, Weitz & Luxenberg, P.C., New York City, Melvyn I. Weiss, David J. Bershad, Michael C. Spencer, Kenneth J. Vianale, Milberg Weiss Bershad Hynes & Lerach LLP, New York City, William S. Lerach, Patrick J. Coughlin, Allen M. Mansfield, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, Robert J. Connerton, James S. Ray, John McN. Broaddus, Connerton & Ray, Washington, D.C., Stephen Gordon, Joel Spivak, Mirkin & Gordon, Great Neck, NY, for plaintiffs in the Laborers Local 17 (97 Civ. 4550) and UFT (97 Civ. 4676) Actions.

Michael A. Ciaffa, G. Oliver Koppell, Meyer, Suozzi, English & Klein, P.C., Mineola, NY, Robert S. Schachter, Natalie Blaney, Zwerling, Schachter & Zwerling, LLP, New York City, Levy, Ratner & Behroozi, p.c., New York City, for plaintiffs in Puerto Rican ILGWU (97 Civ. 8462) and Later–filed Actions (97 Civ. 9395 through 97 Civ. 9402).

David Paul Horowitz, Law Office of David Paul Horowitz, New York City, for plaintiffs in cases 97 Civ. 9399 and 97 Civ. 9401 only.

Peter C. Hein, Barbara Robbins, Wachtell, Lipton, Rosen & Katz, New York City, Paul K. Stecker, Paul F. Jones, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, New York, for defendant Philip Morris Incorporated.

Marjorie Press Lindblom, Peter A. Bellacosa, Kirkland & Ellis, New York City, David M. Bernick, Kirkland & Ellis, Chicago, IL, Kenneth N. Bass, Paul B. Taylor, Kirkland & Ellis, Washington, DC, for defendant Brown & Williamson Tobacco Corporation, including as successor by merger to defendant The American Tobacco Company.

Robert W. Gaffey, Michael S. Chernis, Jones, Day, Reavis & Pogue, New York City, Robert F. McDermott, Jr., Donald B. Ayer, Jones, Day, Reavis & Pogue, Washington, DC, for defendant R.J. Reynolds Tobacco Company, RJR Nabisco Holdings Corp. and RJR Nabisco, Inc.

Mark Cunha, Adam Stein, Simpson Thacher & Bartlett, New York City, for defendant B.A.T Industries p.l.c. in all cases and attorneys for defendant British–American Tobacco Company Ltd. in all cases except 97 Civ. 9395–9398, 97 Civ. 9400 and 07 Civ 9402.

Thomas J. McCormack, Robert Pruyne, Chadbourne & Parke, New York City, for defendant British–American Tobacco Company Ltd. in cases 97 Civ.9395–9398, 97 Civ. 9400 and 97 Civ. 9402.

Alan E. Mansfield, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, New York City, Robert E. Northrip, Bruce R. Tepikian, Samuel B. Sebree, Shook, Hardy & Bacon, L.L.P., Kansas City, MO, for defendant Lorrilard Tobacco Company.

Peter J. McKenna, Eric S. Sarner, Mark S. Cheffo, Skadden, Arps, Slate, Meagher & Flom LLP, New York City, for defendants United States Tobacco Company.

Anthony Mansfield, Seward & Kissel, New York City, for defendant The Tobacco Institute, Inc.

Steven Klugman, Debevoise & Plimpton, New York City, for defendant The Council for Tobacco Research–U.S.A., Inc.

Michael M. Fay, Kasowitz, Benson, Torres & Friedman, New York City, for defendant Liggett Group, Inc.

Bruce M. Ginsberg, Michael C. Lasky, Davis & Gilbert, New York City, for defendant Hill & Knowlton, Inc.

Barry S. Schaevitz, Jacob, Medinger & Finnegan, LLP, New York City, for defendant Smokeless Tobacco Council, Inc.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

### I. Background

Plaintiffs are labor union health and welfare trust funds (the "Funds") that supplement employers' basic medical benefits by providing death, disability and prescription drug benefits and related services. Defendants are tobacco companies and tobacco public relations firms. Plaintiffs allege that defendants have engaged in a conspiracy to deceive the general public, including plaintiffs, as to the health risks associated with smoking, the addictiveness of nicotine, and the levels of nicotine in their products. As a result, plaintiffs allege, they have spent millions of dollars more than they otherwise would have to provide medical benefits to health plan participants. The Funds have brought this action "to recover money expended ... to provide medical treatment to their participants and beneficiaries who have suffered and are suffering from tobacco-related illnesses and to obtain appropriate injunctive relief." Class Action Complaint and Demand for Jury Trial ¶ 7, *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, No. 97 Civ. 4550 (S.D.N.Y. filed June 19, 1997) [hereinafter Compl.].[1] Plaintiffs allege RICO and antitrust violations, and assert common law claims for fraud, breach of special duty, and unjust enrichment.

Defendants have moved to dismiss the action under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. They contend that plaintiffs have no direct claim against defendants for three reasons: 1) as a matter of law, the chain of causation between plaintiffs' injuries and defendants' alleged acts is too attenuated to support a verdict for plaintiffs, because the alleged injuries are only remotely connected to defendants' alleged acts, 2) plaintiffs' sole remedy is by subrogation to their participants' claims, and 3) the federal Cigarette Labeling and Advertising Act preempts all of plaintiffs' common law claims. Defendants also raise additional count-specific objections to each of plaintiffs' claims.

### II. Jurisdiction

This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 1331, 1337 (1994) because Counts I–III of the complaint raise questions of federal law. Supplemental jurisdiction over the state claims raised in Counts IV–X is asserted because the federal and state claims both derive from "a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 254 (2d Cir. 1991); 28 U.S.C. § 1367(a) (1994).

### III. Legal Standard for Motion to Dismiss

In deciding a motion to dismiss under Rule 12(b)(6), the court must accept all material facts alleged in the complaint as true and must draw all reasonable inferences in the nonmovant's favor. *See Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2d Cir.1995). The court may not grant the motion merely because recovery seems remote or unlikely. *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). A complaint should not be dismissed for failure to state a claim unless "it

---

1. Defendants presented their substantive arguments in memoranda filed in *United Federation of Teachers Welfare Fund v. Philip Morris, Inc.*, No. 97–4676 (S.D.N.Y. filed June 25, 1997). Defendants' papers in *Laborers Local 17* incorporate those arguments by reference. The reverse is true for plaintiffs. Accordingly, this opinion will refer to defendants' *UFT* opening and reply memoranda and to plaintiffs' *Laborers Local 17* opposition brief. *See* Memorandum in Support of Defendants' Motion to Dismiss the Complaint for Failure to State a Claim, *United Federation of Teachers Welfare Fund v. Philip Morris, Inc.*, No.

97–4676 (S.D.N.Y. filed June 25, 1997) (dated Oct. 17, 1997) [hereinafter Defs.' Mem.]; Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint, *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, No. 97 Civ. 4550 (S.D.N.Y. filed June 19, 1997) (dated Dec. 5, 1997) [hereinafter Pls.' Mem.]; Memorandum in Support of Defendants' Motion to Dismiss the Complaint for Failure to State a Claim, *United Federation of Teachers Welfare Fund v. Philip Morris, Inc.*, No. 97–4676 (S.D.N.Y. filed June 25, 1997) (dated Jan. 27, 1998) [hereinafter Reply].

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

## IV. Discussion

In recent months, state and federal courts have seen an explosion of civil actions arising from the use, marketing or sale of tobacco products. To date over forty states have filed suit, as have cities, counties, and private third-party payors, all attempting to recover the cost of treating tobacco-related diseases. *See Proposed Tobacco Industry Settlement*, Preamble, ¶ 22 (June 20, 1997). All of these cases address common questions: If in fact the tobacco industry is liable for the cost of tobacco-related disease, to whom should it be held responsible?

As the contents of the tobacco industry's internal research and marketing documents become increasingly available to the general public, some have become convinced that the tobacco industry should be held liable for the entire cost of tobacco-related disease, however that cost was incurred.[2] Whether an industry should be penalized for successfully marketing a legal product is certainly an interesting question, but it is beyond the scope of any single lawsuit. Policymaking on such a scale is ordinarily left to the legislature; in fact, there are various proposals before Congress that would "mandate a total reformation and restructuring of how tobacco products are manufactured, marketed, and distributed in this country." *Proposed Tobacco Industry Settlement*, Preamble ¶ 1.[3] The issue addressed here, in contrast, is much more limited: to determine whether and how defendants should be held responsible to these particular plaintiffs.

As a result, allegations that the defendants have marketed their products to children, that these products are unreasonably dan-

gerous, or that they have inflicted harm on individual smokers are not relevant here. Nor are claims of harm to society or to plaintiffs as members of the general public. Rather, as fundamental principles of proximate cause dictate, plaintiffs may only recover for injuries that they have suffered. If those injuries were caused by defendants, then defendants should indeed be held responsible. But plaintiffs have no standing to vindicate the public's rights. When stripped to the basics, the issues in this litigation are relatively simple: To the extent that plaintiffs have alleged that defendants have harmed them *directly*, they have stated a claim on which relief may be granted.

## A. Do plaintiffs have a direct claim against defendants?

Because the issue of proximate cause is central to the disposition of this case, I will discuss it in some detail before addressing plaintiffs' state and federal claims individually.

### 1. *Proximate Cause*

 Defendants' fundamental argument is that plaintiffs have no direct claim against them because they did not proximately cause plaintiffs' injuries. In general terms, the concept of "proximate cause" prevents a recovery from a party for remote and derivative injuries to a plaintiff resulting from that party's conduct toward another. *See, e.g., Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258, 268–69, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992); *Mobile Life Ins. Co. v. Brame*, 95 U.S. 754, 758–59, 24 L.Ed. 580 (1877). Under the common law, therefore, one who pays the medical expenses of another may not recover those expenses from the third-party tortfeasor who caused the damage. *See, e.g., Associated Gen. Contractors, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 532 n. 25, 103 S.Ct. 897, 74 L.Ed.2d 723

---

2. *See, e.g.*, Blue Cross Blue Shield of Minnesota, *Tobacco Web Site* (visited Mar. 19, 1998) <www.mnbluecrosstobacco.com$ (publishing trial exhibits in *State by Humphrey v. Philip Morris Inc.*, No. C1–94–8565 (Minn. filed Aug. 17, 1994)).

3. *See also Tobacco Sales to Minors Prevention*, S.1713, 105th Cong. (1997); *Public Health Service Act*, S.1648, 105th Cong. (1997); *Tobacco Products vs. Children*, S.1638, 105th Cong. (1997); *Tobacco Quota Fluctuations*, H.R.3264, 105th Cong. (1997); *Federal Fund Expenditure Under Tobacco Settlements*, H.R.J. Res. 109, 105th Cong. (1997).

(1983) (citing 1 J. Sutherland, *Law of Damages* 55–56 (1882)); *Anthony v. Slaid*, 52 Mass. 290, 291 (1846) (plaintiff who undertook to support town paupers could not recover from tortfeasor who assaulted pauper, increasing plaintiff's expenses, as damages were too remote). Plaintiffs have alleged that defendants deceived them about the dangers of tobacco, inhibiting plaintiffs' ability to minimize health-care expenses, and shifting the cost of tobacco-related disease to the plaintiffs. *See, e.g.,* Compl. ¶¶ 269–74. Defendants maintain that plaintiffs' claims are no different from those rejected in *Anthony v. Slaid,* and that the alleged injuries, though worded as direct claims, are equally remote.

The question of when an alleged injury becomes too remote to allow recovery is often difficult. "Because of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point." *Palsgraf v. Long Island R. Co.,* 248 N.Y. 339, 352, 162 N.E. 99 (1928) (Andrews, J. dissenting).[4] That point is reached when "the connection between the defendants' negligence and the claimants' damages [becomes] too tenuous and remote to permit recovery." *Kinsman Transit Co. v. City of Buffalo,* 388 F.2d 821, 824–25 (2d Cir.1968). While "a variety of factors may be relevant in assessing legal [proximate] cause," in order to plead a *prima facie* case, a plaintiff is generally required to "show that the defendant's negligence was a substantial cause of the events which produced the injury." *Derdiarian v. Felix Contracting Corp.,* 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166, 414 N.E.2d 666 (1980); *accord Nallan v. Helmsley–Spear, Inc.,* 50 N.Y.2d 507, 520, 429 N.Y.S.2d 606, 407 N.E.2d 451 (1980). If such a showing is made, no intervening acts—for example, the decision of plan participants to smoke—will break the causal connection if such acts are a reasonably foreseeable result of the defendants' negligence. *Derdiarian,* 51 N.Y.2d at 315, 434 N.Y.S.2d 166, 414 N.E.2d 666; *Stephenson by Coley v. S.C. Johnson & Son, Inc.,* 168 Misc.2d 528, 638 N.Y.S.2d 889, 892 (Sup.

Ct.N.Y.Co.1996), *aff'd,* 658 N.Y.S.2d 636 (2nd Dep't 1997).

■ Other factors that courts may consider when determining proximate cause in intentional tort cases include: 1) the defendant's intent to do harm, 2) the degree of moral wrong involved, and 3) the seriousness of the harm originally intended. Restatement (Second) of Torts § 435B (1965). These factors are considered because the greater the intent to harm, the more foreseeable it is that harm will result.

These general principles govern all common-law claims, including the intentional torts alleged in the complaint. They also apply to plaintiffs' statutory claims. Congress intended that antitrust litigation "would be subject to constraints comparable to well-accepted common-law rules applied in comparable litigation[,]" including rules defining proximate cause. *Associated Gen. Contractors,* 459 U.S. at 533, 103 S.Ct. 897. New York's antitrust statute, the Donnelly Act, has been interpreted similarly. *Anheuser–Busch, Inc. v. Abrams,* 71 N.Y.2d 327, 335, 525 N.Y.S.2d 816, 520 N.E.2d 535 (1988) (Donnelly Act "should generally be construed in light of Federal precedent"); *Van Dussen–Storto Motor Inn, Inc. v. Rochester Tel. Corp.,* 63 A.D.2d 244, 407 N.Y.S.2d 287, 293 (4th Dep't 1978) (defining proximate cause under Donnelly Act by citing to federal precedent); *see also Tri–Star Pictures, Inc. v. Leisure Time Productions, B.V.,* 1992 WL 296314, at *6 (S.D.N.Y.1992), *aff'd,* 17 F.3d 38 (2d Cir.1994) (citing *Van Dussen–Storto Motor Inn* ) (proximate cause under Donnelly Act). The same proximate cause constraints apply to RICO claims. *Holmes,* 503 U.S. at 268, 112 S.Ct. 1311; *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 23–24 (2d Cir.1990) (RICO violations "proximately cause a plaintiff's injury if they are a substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence.").

4. While not part of the majority opinion, the Andrews dissent is often quoted in discussions of proximate cause. *See, e.g., Associated Gen. Contractors,* 459 U.S. at 537 n. 34, 103 S.Ct. 897; *Blue Shield of Va. v. McCready,* 457 U.S. 465, 478 n. 13, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982).

■ The purpose of requiring a direct relationship between defendants' conduct and plaintiffs' injury is threefold. First, the more remote the injury, the more difficult it is to ascertain the amount of damages attributable to the defendants' acts, rather than to some other factor. *Holmes,* 503 U.S. at 269, 112 S.Ct. 1311. Second, allowing indirectly injured plaintiffs to proceed creates the risk of multiple recoveries. *Id.* Third, those who are directly injured are in a better position to "vindicate the law as private attorneys general," without any of the problems found in suits based on more remote injuries. *Id.* at 269–70, 112 S.Ct. 1311.

If all of plaintiffs' allegations regarding defendants' knowledge and intent are true—and I must assume as much for the purposes of this motion—then a jury could reasonably find that plaintiffs' injuries were foreseeable, and that defendants' behavior was a substantial cause of those injuries. For example, plaintiffs maintain that defendants knew how to manufacture a less harmful cigarette but did not do so because it would have compromised their litigation strategy. Compl. ¶¶ 125–39. One direct consequence of such a decision would be to limit plaintiffs' ability to reduce their health care costs by encouraging their participants to use less harmful tobacco products. The next step, then, is to analyze the policy factors enunciated in *Holmes* to determine whether plaintiffs' injuries are too remote for recovery as a matter of law.

First, are there other parties better suited to act as "private attorneys general"? Individual smokers and public agencies have an incentive equal to that of the plaintiffs' to "prosecute" defendants for deceiving the public about the dangers of tobacco. None, however, would have a strong interest in vindicating the harm to plaintiffs—their reduced ability to minimize health-care expenses and their assumption of the financial burden of tobacco-related disease among plan participants. There is a substantial risk that those harms will go unremedied if this action is not allowed to continue.

Next, is there a risk of multiple recoveries for the same harm? Plaintiffs are correct in arguing that there is not. No other party may recover for harm to the Funds' infra-structure, financial stability, or ability to project costs. To the extent that the harm took the form of increased expenses for medical care, those costs will only be recovered once. Plan participants who bring personal injury actions against the defendants may not recover expenses that the Funds have already reimbursed. N.Y. C.P.L.R. 4545(c) (McKinney 1992). Conversely, as defendants' briefs discuss at length, plaintiffs may not recover for the personal injuries of their participants. Because costs borne only by the Funds are recoverable only by the Funds, there can be no risk of multiple recoveries.

Finally, will it be difficult to ascertain the damages caused by the defendants? Plaintiffs face a significant burden in the damages phase of litigation. Not only will they have to translate intangible concepts such as "reduced ability to minimize health-care expenses" into monetary figures, but they will have to propose a plausible method of separating damages caused by defendants from damages caused by other factors. Ultimately, plaintiffs may not be able to sustain their burden of proof. That does not mean, however, that they should not be allowed to make the attempt. *See Texas v. American Tobacco Co.,* —— F.Supp.2d ——, ——, No. 5–96–CV–91, slip op. at 17 [1997 WL 908606] (E.D.Tex.1997) (difficulty in and of itself does not bar action).

■ Proximate cause is ordinarily a question for the fact finder to resolve. *Derdiarian,* 51 N.Y.2d at 314–15, 434 N.Y.S.2d 166, 414 N.E.2d 666; *Nallan,* 50 N.Y.2d at 520, 429 N.Y.S.2d 606, 407 N.E.2d 451. "Obviously there is a substantial difference between alleging something and proving it." *Arizona v. American Tobacco Co., Inc.,* No. CV–96–14769, slip op. at 2 (Ariz.Super.Ct. May 27, 1997) (order denying motion to dismiss and holding that proximate cause was not precluded by the "very nature" of claimed damages). Nonetheless, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) A pleading will survive a motion to dismiss if it alleges a set of facts that would entitle the plaintiff to relief if proven. *See id.* at 236, 94 S.Ct. 1683;

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Plaintiffs have stated a *prima facie* case for several of their claims, as discussed in part IV.B below. While these claims may be difficult to prove, plaintiffs' claims of injury are not so remote as to warrant dismissal at this stage.

## 2. *Subrogation*

■■■ Defendants maintain that because plaintiffs' claims are indirect, their only remedy is by suing as subrogees of any plan participants harmed by the defendants. In general, subrogation is a legal device that enables one party (the "subrogee") to put itself in the place of a party who has sustained an injury in order to obtain recovery. Subrogation may be available either through statute or private agreement. Plaintiffs here have no statutory right to subrogation; however, many of their employee benefit plan contracts contain subrogation provisions. *See, e.g.,* Defs.' Mem. at 2 (quoting benefit plan for participants in the United Federation of Teachers Welfare Fund). As subrogees, plaintiffs would "stand in the shoes" of the injured participants, and their claims would be subject to the same affirmative defenses, such as assumption of risk, as would apply in actions brought by the harmed individuals.

Some courts in other tobacco-related cases have held that subrogation is the exclusive remedy against these defendants. However, in each of those cases, the right of subrogation arose by statute, not by private contract. *Iowa v. R.J. Reynolds,* No. CL71048 (Iowa Dist.Ct. Aug. 26, 1997); *Maryland v. Philip Morris Inc.,* 1997 WL 540913 (Md.Cir.Ct. 1997); *McGraw v. American Tobacco Co.,* No. 94–C1707, 1995 WL 569618 (W.Va.Cir. Ct. June 31, 1997) (orders denying motions to dismiss on subrogation grounds). Iowa, Maryland, and West Virginia sued tobacco companies to recover the cost of providing health care to their citizens. In each case, the court relied on the principle that where there is a statutory remedy, that remedy is exclusive unless the statute indicates otherwise. Each court concluded that the applicable state Medicaid statute, which created a right of subrogation, was intended to provide an ex-

clusive remedy for the State. *Iowa,* No. CL71048, slip op. at 6–7; *Maryland,* 1997 WL 540913 at *3; *McGraw,* No. 94–C1707, slip op. at 5. Courts applying other statutes have reached the opposite conclusion on the ground that the language in their State Medicaid statutes created a cumulative, rather than an exclusive remedy. *Texas v. American Tobacco Co.,* —— F.Supp.2d ——, —— – ——, No. 5–96CV–91, slip op. at 10–11 (E.D.Tex. Sept. 8, 1997) (statutory remedy does not extinguish prior common law cause of action unless it does so explicitly); *Illinois v. Philip Morris. Inc.,* No. 96L13146, slip op. at 5 (Ill.Cir.Ct. Nov. 13, 1997) (nothing in the statute limits the State to subrogation) (orders partially granting motions to dismiss). Neither analysis is directly applicable here, as New York's Medicaid statute does not apply to these plaintiffs.

■■■ There is no statute establishing subrogation as plaintiffs' exclusive remedy. Instead, plaintiffs' subrogation rights were created by private contracts with plan participants. Such rights cannot limit the Funds' ability to recover from those not party to the agreements. Thus, if plaintiffs have stated valid causes of action, the fact that they may also be entitled to sue in subrogation would not extinguish them.

## 3. *Preemption*

Defendants argue in the alternative that plaintiffs' common law claims have been preempted by the federal Cigarette Labeling and Advertising Act. 15 U.S.C. §§ 1331–40 (1994) [hereinafter "the Act"]. The Act mandates certain uniform warning labels on cigarette packaging and preempts all State regulation of tobacco advertising: "No statement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter." *Id.* § 1334(b). Defendants contend that this language preempts plaintiffs' fraud, breach of special duty, and unjust enrichment claims, which are New York common law causes of action.

The controlling decision addressing the scope of the preemption provision is *Cipol-*

lone v. Liggett Group, Inc., 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (plurality opinion). *Cipollone* held that common law rules impose "requirements or prohibitions" within the meaning of the Act because they are "premised on the existence of a legal duty." *Id.* at 522, 112 S.Ct. 2608. The Act, therefore, applies to common law claims. *Id.* at 523, 112 S.Ct. 2608 (Scalia and Thomas, JJ., concurring in relevant part). To determine whether a particular claim is preempted, the court must "ask whether the legal duty that is the predicate of the common-law damages action constitutes a 'requirement or prohibition based on smoking and health … imposed under state law with respect to advertising or promotion,' giving that clause a fair but narrow reading." *Id.* at 523–24, 112 S.Ct. 2608.

■ Count V of the complaint alleges that defendants intentionally "misrepresented, failed to disclose and concealed material facts" about the hazards of tobacco use. Compl. ¶ 265. The Act preempts fraudulent misrepresentation claims that merely allege that defendants should have included additional or more clearly stated warnings in their advertisements. *Cipollone*, 505 U.S. at 524, 112 S.Ct. 2608. Plaintiffs, however, allege intentional fraud, both by false representation and by concealment of material facts. *Cipollone* expressly held that claims of fraud by intentional misstatement are not preempted because they "are predicated not on a duty 'based on smoking and health' but rather on a more general obligation: the duty not to deceive." *Id.* at 528–29 (Blackmun, Kennedy, and Souter, JJ., concurring in the judgment in relevant part); *see also State by Humphrey v. Philip Morris Inc.*, No. C1–94–8565, 1998 WL 257214 (Minn. Feb. 2, 1998); *DaSilva v. American Tobacco Co.*, 175 Misc.2d 424, 667 N.Y.S.2d 653 (Sup. Ct.N.Y.Co.1997); *Small v. Lorillard Tobacco Co., Inc.*, 175 Misc.2d 294, 668 N.Y.S.2d 307 (Sup.Ct.N.Y.1997) (denying motions to dismiss on preemption grounds). The Act, therefore, does not bar plaintiffs' fraud claims.

■ Count VI states that defendants voluntarily assumed a special duty to protect the public health and to provide information about the effects of tobacco use. Compl. ¶ 279. *Cipollone* did not discuss preemption of special duty claims. In the related context of express warranties, however, the Court concluded that "a common-law remedy for a contractual commitment voluntarily undertaken should not be regarded as a 'requirement … imposed under State law.'" *Cipollone*, 505 U.S. at 526, 112 S.Ct. 2608 (quoting 15 U.S.C. § 1334(b)). The predicate duty is imposed not by the State, but by the party assuming the obligation. *Id.* at 525, 112 S.Ct. 2608. Claims based on voluntarily assumed obligations, then, are not preempted because they do not fall within the language of the Act. *Id.* at 525–26, 112 S.Ct. 2608 (Blackmun, Kennedy, and Souter, JJ., concurring in the judgment in relevant part); *State by Humphrey v. Philip Morris Inc.*, No. C1–94–8565, 1998 WL 257214 (Minn. Feb. 2, 1998) (order finding no preemption). Count VI is not preempted because the special duty that it alleges is one that would have been voluntarily assumed by defendants rather than one imposed by the State.

■ Plaintiffs' final common law claim is for unjust enrichment. Compl. ¶¶ 308–15. Plaintiffs allege that by paying their participants' tobacco-related medical costs, they have conferred a benefit on the defendants that the defendants should repay. Compl. ¶¶ 313–14. Payment of medical costs is unrelated to the "advertising and promotion" of tobacco. Assuming for the moment that plaintiffs' payments created a valid unjust enrichment claim, a "fair but narrow reading" of the Act, *Cipollone*, 505 U.S. at 524, 112 S.Ct. 2608, reveals that such a claim is not within the statute's reach. Accordingly, the Cigarette Labeling and Advertising Act does not preempt any of plaintiffs' common law claims.

**B. Have plaintiffs stated a *prima facie* case for each claim?**

In addition to urging the court to dismiss the entire complaint on remoteness grounds, defendants raise count-specific objections to each of plaintiffs' federal and state claims. I will address each of these in turn.

### 1. *RICO*

RICO authorizes private civil actions by "any person injured in his business or property by reason of," 18 U.S.C. § 1964(c) (1994), "a pattern of racketeering activity" *id.* § 1962, such as fraud or obstruction of justice. *See id.* § 1961. As discussed above, plaintiffs' showing of factual and proximate cause is sufficient to survive a motion to dismiss. In an action brought pursuant to statute, however, standing requires more than mere causation: There is also the issue of statutory intent. To satisfy the requirement, "the plaintiff[s] must show both that [they are] within the class the statute sought to protect and that the harm done was one that the statute was meant to prevent." *Abrahams v. Young & Rubicam Inc.,* 79 F.3d 234, 237 (2d Cir.1996).

Counts I and II describe the sort of "pernicious commercial practices" that RICO was intended to prevent. *See Ehrich v. B.A.T. Indus. P.L.C.,* 964 F.Supp. 164, 166–67 (D.N.J.1997) (quoting *Cuzzupe v. Paparone Realty Co.,* 596 F.Supp. 988, 991 (D.N.J.1984) (RICO designed to eliminate commercial practices, not personal injuries)). In Count I, plaintiffs allege that the defendant tobacco companies violated § 1962(c) by conducting certain enterprises through a pattern of racketeering activity, including mail and wire fraud, perjury, and obstruction of justice. Compl. ¶¶ 212–25. Two or more of these acts constitute "racketeering" if they occur often enough to comprise a pattern of activity.[5] The enterprises identified are the Tobacco Institute, the Council for Tobacco Research, and a "public relations enterprise" that amounted to an association-in-fact in which all defendants participated. Plaintiffs' RICO Statement at 38–39, *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,* No. 97 Civ. 4550 (S.D.N.Y. filed June 19, 1997) (hereinafter RICO Statement). Count II alleges that defendants used income derived from that pattern of racketeering activity to acquire and operate the Tobacco Institute and the Council for Tobacco Re-

search, in violation of § 1962(a). Compl. ¶¶ 226–33. The complaint also alleges a RICO conspiracy.[6] *See* 18 U.S.C. § 1962(d).

The question, then, is whether plaintiffs fall within RICO's protected "zone-of-interests." *See Holmes,* 503 U.S. 258, 112 S.Ct. 1311 (Scalia, J., concurring). Only the direct targets of a racketeering scheme have standing as intended beneficiaries of the RICO laws. *Abrahams,* 79 F.3d at 238 (plaintiff's injuries "did not flow from the harms that the predicate acts ... were intended to cause and the laws against them were intended to prevent"); *In re American Exp. Co. Shareholder Litigation,* 39 F.3d 395, 400 (2d Cir .1994) (shareholders harmed by public exposure of RICO violations aimed at competitor not intended targets of violations); *Hecht,* 897 F.2d at 24 (salesman had no RICO claim where employer's fraud drove potential customers away); *cf. Standardbred Owners Assoc. v. Roosevelt Raceway Assoc.,* 985 F.2d 102, 104 (2d Cir.1993) (plaintiffs were direct targets of fraudulent schemes). Plaintiffs maintain that they, along with their participants and others, were among the direct targets of the fraud alleged. In support of that statement, they claim that defendants made "deliberate efforts ... to give Plaintiffs ... the materially false impression that there are no negative health consequences to tobacco use, ... that nicotine is not addictive and that the Tobacco Companies are not manipulating the nicotine levels in their products." Compl. ¶ 211; RICO Statement at 35–36. An alleged object of defendants' conduct "was the avoidance and shifting of tobacco-related health care costs onto others, including Plaintiffs." Compl. ¶ 224; *accord* RICO Statement at 33, 46. Because these allegations demonstrate that plaintiffs do have standing, their RICO claims are sufficient to withstand a motion to dismiss.

Defendants argue that, causation issues aside, plaintiffs' RICO claims must be dismissed as a matter of law because "all of the

---

**5.** Defendants do not dispute the adequacy of plaintiffs' allegations regarding the "pattern" element.

**6.** *See Salinas v. United States,* —— U.S. ——, 118 S.Ct. 469, 477–78, 139 L.Ed.2d 352 (1997) (RICO conspiracy exists if alleged conspirator knew of conspiracy's goals and agreed to facilitate them).

Funds' claimed injuries result from alleged *personal* injuries to their participants," rather than injuries to business or property. Defs.' Mem. at 13. They particularly rely on the holding in *City and County of San Francisco v. Philip Morris, Inc.,* 957 F.Supp. 1130 (N.D.Cal.1997) [hereinafter *San Francisco I*], in which local governments sought to recover the cost of treating indigent residents suffering from tobacco-related diseases. There, the court dismissed the RICO claim with leave to amend, finding that plaintiffs' claims were "wholly derivative" of those of the individual smokers.[7] *Id.* at 1139. As a result, plaintiffs' injuries consisted only of the economic consequences of personal injuries, which are not compensable under RICO, and that plaintiffs therefore had failed to meet the proximate cause requirements outlined in *Holmes. Id.* at 1138.

When defendants argue that plaintiffs' claims are derived from personal injuries, they are simply repeating their argument that plaintiffs' injuries are too remote. By determining that plaintiffs have adequately alleged proximate cause, I have already concluded that plaintiffs' claims are *not* based on the personal injuries of their participants. *See* part IV.A.2. Instead, they are based on the harm to plaintiffs' infrastructure and financial stability caused by defendants' alleged attempts to deceive the plaintiffs. As a result, they do allege an injury to business or property, as the statute requires. Thus, defendants' motion to dismiss Counts I and II is denied.

### 2. *Antitrust*

Federal antitrust law authorizes private civil actions by "any person ... injured in his business or property by reason of anything forbidden in the antitrust laws[.]" 15 U.S.C. § 15 (1994) Those laws forbid "[e]very contract, combination ..., or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations[.]" *Id.* § 1. New York antitrust law prohibits "[e]v-

ery contract, agreement, arrangement or combination whereby ... [c]ompetition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service ... is or may be restrained." Donnelly Act, N.Y.Gen.Bus. Law § 340.1 (McKinney 1988). As discussed in part IV.B.1 above, I have already concluded that plaintiffs' claims are for injuries to business or property that are not so remote as to prevent recovery. Standing thus depends on whether defendants' alleged acts constitute an antitrust violation and on whether plaintiffs are within the class the antitrust laws seek to protect. *McCready,* 457 U.S. at 473, 102 S.Ct. 2540; *see also Abrahams,* 79 F.3d at 237.

An antitrust violation is an agreement in restraint of trade that causes "injury of the type the antitrust laws were intended to prevent.... The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 125, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969) (injury should be "the type of loss that the claimed violations of the antitrust laws would be likely to cause.").

In Count III, plaintiffs allege that defendants conspired to restrain trade in the market for tobacco products by agreeing to eliminate competition in the research, development, production and marketing of safer alternative tobacco products. Compl. ¶¶ 240–41.[8] Conduct suppressing product innovation and development has an anticompetitive effect. *See, e.g., Allied Tube & Conduit Corp. v. Indian Head, Inc.,* 486 U.S. 492, 108 S.Ct. 1931, 100 L.Ed.2d 497 (1988); *American Soc'y of Mechanical Eng'rs, Inc. v. Hydrolevel Corp.,* 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982) (refusal of standard-setting organizations to approve new products was anticompetitive); *cf. Associated*

**7.** Plaintiffs did not pursue the RICO claim in their *Second Amended Complaint. City and County of San Francisco v. Philip Morris, Inc.,* No. C–26–2090, 1998 WL 230980 (N.D.Cal. Mar. 3, 1998) (order denying motion to dismiss second

amended complaint) [hereinafter *San Francisco II*].

**8.** Count IV restates the allegations in Count III in the context of New York law.

*Gen. Contractors,* 459 U.S. at 528, 103 S.Ct. 897 ("Coercive activity that prevents its victims from making free choices between market alternatives is inherently destructive of competitive conditions. . . ."). In this respect, Count III alleges a violation of the type the antitrust laws are intended to prevent.[9]

Although plaintiffs have alleged an antitrust violation, their antitrust claims must be dismissed because plaintiffs are not "within that area of the economy . . . endangered by [that] breakdown of competitive conditions." *McCready,* 457 U.S. at 480, 102 S.Ct. 2540 (quoting *In re Multidistrict Vehicle Air Pollution,* 481 F.2d 122, 129 (9th Cir.1973)). The Second Circuit has adopted a "target area" test for determining antitrust standing: the plaintiff must either be the "direct target" of the alleged antitrust violation or fall within its "target area." *Crimpers Promotions Inc. v. Home Box Office, Inc.,* 724 F.2d 290, 292 (2d Cir.1983) (citing *Calderone Enterprises Corp. v. United Artists Theatre Circuit, Inc.,* 454 F.2d 1292 (2d Cir.1971); *Billy Baxter, Inc. v. Coca–Cola Co.,* 431 F.2d 183 (2d Cir.1970)). The target area is that sector of the economy endangered by a breakdown of competitive conditions in the particular industry. *Id.* Plaintiffs have not alleged that they were a direct target of defendants' acts, or that they are within the target area of those acts.

Plaintiffs allege that defendants agreed to forego the development of safer alternative tobacco products. The direct targets of such an agreement, if it exists, are obviously consumers of tobacco products. The target area is the tobacco sector of the economy in that the unlawful agreement to suppress development would result in a market where neither demand nor prices would be governed by market forces. Plaintiffs claim that as a

result of defendants' conduct, medical costs for their participants with tobacco-related diseases have increased. This is not an injury created by endangering competition in the target area. In fact, it is not clear that plaintiffs' interests would be served by enhanced competition in the tobacco market. *See Associated Gen. Contractors,* 459 U.S. at 539, 103 S.Ct. 897. while stifled product innovation may have increased the number of participants with tobacco-related disease, plaintiffs also allege that anticompetitive pressures have increased the price of tobacco products, an effect which would tend to reduce the number of tobacco consumers. Therefore, as they were not targets of the anticompetitive activity alleged, plaintiffs do not have standing to pursue the claimed antitrust violation. Accordingly, defendants' motion to dismiss Counts III and IV is granted.

### 3. *Fraud*

Common law fraud may consist of either fraudulent misrepresentation or fraudulent concealment. Plaintiffs' fraud claim alleges both. To prove fraudulent misrepresentation under New York law, a plaintiff must show: 1) a material false representation, 2) intent to defraud the plaintiff thereby, 3) reasonable reliance on the representation, and 4) damage resulting from such reliance. *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank,* 57 F.3d 146, 153 (2d Cir.1995); *Mallis v. Bankers Trust Co.,* 615 F.2d 68, 80 (2d Cir. 1980). Each element must be shown by clear and convincing evidence. *Banque Arabe,* 57 F.3d at 153. To establish fraudulent concealment, a plaintiff must prove all of the above elements, and must show by clear and convincing evidence that the defendant had a duty to disclose the material information concealed as well. *Id.* That duty may arise from

---

**9.** Other activities alleged in Count III, while possibly unlawful, do not constitute antitrust violations. Plaintiffs claim that defendants suppressed information that would otherwise have affected consumer behavior in the market for tobacco products, causing price inflation and increasing the demand for tobacco products. Compl. ¶¶ 238, 241. Creating increased demand for a product is not an anticompetitive activity. There can be no antitrust violation when the effect of an agreement is to increase competition,

even if that agreement is unlawful for some other reason. *Brunswick,* 429 U.S. at 488, 97 S.Ct. 690; *see also McCready,* 457 U.S. at 482, 102 S.Ct. 2540. Plaintiffs also claim that defendants restrained research and withheld information from participants in the market for health care. Compl. ¶¶ 248–49, 254. Such activities are not antitrust violations because they do not restrict competition among health care providers. Antitrust law forbids agreements in restraint of the flow of commerce, not the flow of information.

"the need to complete or clarify [a] partial or ambiguous statement, or from a fiduciary or confidential relationship between the parties." *Id.* at 155 (citations omitted). It may also arise where one party has superior knowledge of certain information, not readily available to the other party, and knows that the second party is acting on the basis of mistaken knowledge. *Id.*

■ Count V alleges that plaintiffs relied on statements in which defendants promised to disclose all material information discovered about the effects of tobacco on human health. Compl. ¶¶ 274–75. Plaintiffs charge that despite that promise, defendants intentionally "misrepresented, failed to disclose and concealed material facts about the human health hazards of tobacco use." *Id.* ¶ 265. They allegedly misrepresented those facts by making partial and incomplete statements concerning the health effects of smoking, *id.* ¶ 267, and fraudulently concealed material facts by burying the results of secret tobacco research not readily available to the public, *id.* ¶ 266. Plaintiffs claim that because they accepted the information they received from the defendants as true, they did not take action as quickly or as thoroughly as they otherwise would have. Instead, they depended on false and incomplete information when deciding what actions to take to reduce tobacco use among their participants. This reliance ultimately led to an increase in their health care costs. *Id.* ¶¶ 269, 274.

For the purposes of this motion, I must accept as true plaintiffs' allegations that defendants have been conducting secret research into the dangers of tobacco and that they have intentionally suppressed the negative results of that research. If so, then defendants have had superior knowledge of material information not readily available to the plaintiffs, and their public statements regarding the health effects of smoking have been, at best, incomplete. Under these circumstances, defendants would have had a duty to disclose the results of their research, as plaintiffs were conducting their business on the basis of incomplete knowledge of the dangers of tobacco.

Defendants argue that if plaintiffs relied on defendants' representations, that reliance was not justifiable because plaintiffs were sophisticated parties with access to many other sources of information. New York follows a two-tier standard in determining whether reliance is reasonable. When matters are held to be "peculiarly within defendant's knowledge," a plaintiff may rely on the defendant's statements without further investigation, "as [it] has no independent means of ascertaining the truth." *Mallis,* 615 F.2d at 80; *Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531, 1542 (2d Cir.1997). "[I]ndeed some cases have imposed liability in situations in which plaintiff could have determined the truth with relatively modest investigation." *Mallis,* 615 F.2d at 80. When misrepresentations concern matters *not* peculiarly within the defendant's knowledge, New York courts have often found no justifiable reliance, holding that if a plaintiff "has the means of knowing, by the exercise of ordinary intelligence, the truth . . . [it] must make use of those means." *Mallis,* 615 F.2d at 80–81; *Banque Arabe,* 57 F.3d at 156; *Lazard Freres,* 108 F.3d at 1542. Such decisions have generally involved plaintiffs who were "placed on guard or practically faced with the facts." *Mallis,* 615 F.2d at 81.

In the cases pending here, a jury could reasonably conclude that the truth about the health effects of tobacco was peculiarly within the defendants' knowledge. Plaintiffs maintain that defendants assumed responsibility for conducting and reporting tobacco research, and that they took steps to ensure that the public would not be able to obtain the negative results. Compl. ¶¶ 109–24. A jury accepting those allegations could find that it was justifiable for plaintiffs to accept the defendants' statements about tobacco as true without conducting an independent investigation. These are questions of fact that cannot be decided at this stage of the proceedings. For the same reason, it is not yet appropriate to reach the question of whether plaintiffs relied to their detriment on defendants' statements—i.e., whether their costs would have been reduced had they known of the concealed information. Plaintiffs have set forth "circumstances constituting fraud" with sufficient particularity. *See* Fed. R.Civ.P. 9(b). Whether they will be able to

prove their claim is a matter reserved for the trier of fact. *See San Francisco II*, 957 F.Supp. at 1144–45(order denying motion to dismiss fraud claim as pleaded in second amended complaint). Consequently, defendants' motion to dismiss Count V is denied.

### 4. *Breach of Special Duty*

 Under certain circumstances the law imposes a duty of care on one who acts for the benefit of another, even in the absence of a contractual relationship. "[O]ne who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *Glanzer v. Shepard*, 233 N.Y. 236, 239, 135 N.E. 275 (1922) (citations omitted); *see also Nallan*, 50 N.Y.2d at 522, 429 N.Y.S.2d 606, 407 N.E.2d 451 (quoting *H. R. Moch Co. v. Rensselaer Water Co.*, 247 N.Y. 160, 167–68, 159 N.E. 896 (1928)). If a duty of care exists, then "a tort may result as well from acts of omission as of commission." *Moch*, 247 N.Y. at 167, 159 N.E. 896. Existence of a duty is a question of law for the court to decide. *Gerdowsky v. Crain's N.Y. Business*, 188 A.D.2d 93, 593 N.Y.S.2d 514, 515 (1st Dep't 1993).

In Count VI, plaintiffs contend that defendants assumed a duty to "those who advance the public health" by promising to assist in research efforts and to provide complete information about smoking and health. Compl. ¶¶ 278–79. They allege that defendants' subsequent conduct demonstrated a lack of reasonable care in the performance of that duty. *Id.* ¶ 281. Finally, they claim that they delayed taking action to reduce costs associated with tobacco-related disease because they relied on defendants' promises. *Id.* ¶¶ 280–82. As discussed above, a jury could reasonably conclude that defendants were in the best position to discover the truth about the health effects of tobacco. *See* pt. IV.B.4. Having done so, it could then reasonably find that it was justifiable for plaintiffs to rely on defendants' promises to seek out and publicize that information.

 The Restatement (Second) of Torts summarizes the breach of special duty doctrine as follows:

One who undertakes . . . to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1965). Defendants argue that Count VI does not state a claim because plaintiffs have not alleged that they suffered physical harm. *Compare Illinois v. Philip Morris, Inc.*, No. 96L13146, slip op. at 17–18 (Ill.Cir.Ct. Nov. 13, 1997); *Iowa v. R.J. Reynolds*, No. CL71048, slip op. at 11 (Iowa Dist.Ct. Aug. 26, 1997); *Washington v. American Tobacco Co.*, No. 96–2–15056–8–SEA, slip op. at 4 (Wash.Super.Ct., June 10, 1997) (special duty claims dismissed because no physical harm alleged) *with San Francisco I*, 957 F.Supp. at 1143; *San Francisco II*, at 1145 (physical harm not required). New York has not adopted the Restatement's physical harm requirement. On the contrary, New York courts have recognized that economic loss or damage to property may give rise to an action for breach of an assumed duty. *Glanzer*, 233 N.Y. 236, 135 N.E. 275 (defendant who negligently certified weight of shipment of beans liable for resulting economic loss); *Moch*, 247 N.Y. 160, 159 N.E. 896 (no liability for property damage because no proximate cause found). While these cases predate the Restatement by several decades, no court has overruled them. It is likely that a New York court, if presented with the question, would hold that New York continues to recognize such causes of action. A federal court should not restrict a common law cause of action in a manner that the state courts have not required. Accordingly, plaintiffs are not required to allege that defendants have caused them physical harm.

 The remaining issue to be decided is whether defendants assumed a duty of care to the plaintiffs. An assumed duty arises "once a person undertakes a certain course of conduct upon which another relies."

*Heard v. City of New York*, 82 N.Y.2d 66, 72, 603 N.Y.S.2d 414, 623 N.E.2d 541 (1993); *Nallan*, 50 N.Y.2d at 522, 429 N.Y.S.2d 606, 407 N.E.2d 451. In deciding whether a duty was assumed under New York law, "the question is whether defendant's conduct placed plaintiff in a more vulnerable position than plaintiff would have been in had defendant done nothing." *Heard*, 82 N.Y.2d at 72, 603 N.Y.S.2d 414, 623 N.E.2d 541; *Nallan*, 50 N.Y.2d at 522, 429 N.Y.S.2d 606, 407 N.E.2d 451; *Jansen v. Fidelity & Casualty Co. of New York*, 165 A.D.2d 223, 566 N.Y.S.2d 962, 964 (3rd Dep't 1991), *aff'd*, 79 N.Y.2d 867, 581 N.Y.S.2d 156, 589 N.E.2d 379 (1992); *see also Moch*, 247 N.Y. at 168, 159 N.E. 896 ("The query always is whether the purported wrongdoer has advanced to such a point as to have launched a force or instrument of harm, or has stopped where inaction is at most a refusal to become an instrument of good.").

■ The allegations in Count VI, when assumed to be true, indicate that defendants voluntarily assumed a duty to the plaintiffs. Relying on defendants' promises to "aid and assist the research effort into all phases of tobacco use and health," Compl. ¶ 279, plaintiffs made decisions that negatively affected the financial health of their businesses. That negative impact was the direct result of defendants' promise to act on plaintiffs' behalf. Had defendants fully kept those promises, plaintiffs would have been alerted to the full cost of tobacco-related disease. Had defendants remained silent, plaintiffs would likely have obtained that information from other sources. By assuming to act, defendants thereby become subject to the duty of acting carefully, if at all. *See Glanzer*, 233 N.Y. at 239, 135 N.E. 275.

While plaintiffs may recover for breach of any duty that defendants assumed on their behalf, they may not recover for breach of a duty assumed to another. "[A] duty directly assumed for the benefit of a particular person or entity does not extend to third parties who were not the intended beneficiaries of the subject undertaking." [10] *Jansen*, 566 N.Y.S.2d at 964. Neither may plaintiffs re-

cover for breach of a duty voluntarily assumed on behalf of the public generally. It is the responsibility of the courts to "fix the orbit of duty" within the limits dictated by both policy and logic. *Jansen*, 566 N.Y.S.2d at 965. If any member of the public could allege a special duty on the basis of general public statements, liability would be "unduly and indeed indefinitely extended by this enlargement of the zone of duty". *See Moch*, 247 N.Y. at 168, 159 N.E. 896. Taken to this extreme, the special duty doctrine would displace negligence-based tort law entirely. To recover, therefore, plaintiffs will have to show that defendants made promises directly to health care providers such as the plaintiffs. With that caveat, defendants' motion to dismiss Count VI is denied.

### 5. *Unjust Enrichment*

■ Liability for unjust enrichment rests on the equitable principle that a person "shall not be allowed to enrich himself unjustly at the expense of another." *Miller v. Schloss*, 218 N.Y. 400, 407, 113 N.E. 337 (1916); *Manufacturers Hanover Trust Co. v. Chemical Bank*, 160 A.D.2d 113, 559 N.Y.S.2d 704, 707 (1st Dep't 1990) A claim for unjust enrichment is available when "the acts of the parties or others have placed in the possession of one person money under such circumstances that in equity and good conscience he ought not to retain it." *Miller*, 218 N.Y. at 407, 113 N.E. 337; *Manufacturers Hanover Trust*, 559 N.Y.S.2d at 707. In Count X, plaintiffs allege that by paying the medical expenses of their participants for treatment of tobacco-related diseases, they "expended sums which Defendants had . . . a duty to pay" because the expenses were consequences of defendants' unlawful activities. Compl. ¶¶ 311–13. They argue that defendants have been unjustly enriched as a result.

■ To recover for unjust enrichment, plaintiffs must show that "services were performed for the defendant[s] resulting in . . . unjust enrichment." *Kapral's Tire Service, Inc. v. Aztek Tread Corp.*, 124 A.D.2d 1011,

10. Plaintiffs are not alleging that they were the intended third party beneficiaries of promises made to their participants. *See* Restatement (Second) of Torts § 324A (1965).

508 N.Y.S.2d 777, 778 (4th Dep't 1986). "It is not enough that the defendant received a benefit from the activities of the plaintiff...; if services were performed at the behest of someone other than the defendant, the plaintiff must look to that person for recovery." *Kagan v. K–Tel Entertainment, Inc.*, 172 A.D.2d 375, 568 N.Y.S.2d 756, 757 (1st Dep't 1991); *see also Schuckman Realty, Inc. v. Marine Midland Bank, N.A.*, 664 N.Y.S.2d 73, 74 (2nd Dep't 1997); *Kapral's Tire Service*, 508 N.Y.S.2d at 778. The expenses that plaintiffs incurred were paid at the behest of their participants. They did not confer a benefit on the defendants. The simple assertion that without those payments "defendants would have been liable for lawsuits by individual smokers seeking to recover the cost of their medical care," Pls.' Br. at 49, is too speculative to constitute a benefit accepted by the defendants. *See Maryland v. Philip Morris Inc.*, 1997 WL 540913 at *16 (Md.Cir. Ct.1997). Under these circumstances, the plaintiffs cannot establish that their actions unjustly enriched the defendants. Defendants' motion to dismiss Count X is therefore granted.

## V. CONCLUSION

Defendants' motion to dismiss the RICO claims stated in Counts I and II is denied.

Defendants' motion to dismiss the antitrust claims stated in Counts III and IV is granted.

Defendants' motion to dismiss the fraud claim stated in Count V is denied.

Defendants' motion to dismiss the breach of special duty claim stated in Count VI is denied.

The claims alleged in Count VII (strict liability), Count VIII (negligence), and Count IX (breach of express and implied warranties) are dismissed without prejudice with plaintiffs' consent.

Defendants' motion to dismiss the unjust enrichment claim stated in Count X is granted.

SO ORDERED: